

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
09/15/2020

|  |  |
|---|---|
| In re: | § Chapter 11 |
| | § |
| **SAEXPLORATION HOLDINGS, INC.,** *et al.,* | § Case No. 20-34306 (MI) |
| | § |
| | § **(Jointly Administered)** |
| Debtors.[1] | § |

**ORDER (I) CONDITIONALLY**
**APPROVING DISCLOSURE STATEMENT, (II) APPROVING**
**PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO**
**ACCEPT OR REJECT PLAN; (III) APPROVING NOTICES; (IV) APPROVING**
RIGHTS OFFERING PROCEDURES; AND (V) GRANTING RELATED RELIEF
[Relates to Docket No. 20]

The above-captioned debtors and debtors in possession (collectively, the "Debtors") filed

their motion (the "Motion")[2] for entry of an order under sections 105, 363, 1125, 1126, and 1128

of the Bankruptcy Code, Bankruptcy Rules 3016, 3017, 3018, 3020, 6003, and 6004, Bankruptcy

Local Rules 1075-1, 3016-1 and 9013-1, and the Complex Case Procedures:

(i) Conditionally approving the *Second Amended Disclosure Statement for the Debtors'*

*First Amended Chapter 11 Plan of Reorganization* (the "Disclosure Statement");

(ii) Scheduling a combined hearing to consider (a) final approval of the Disclosure

Statement; and (b) confirmation of the *Debtors' First Amended Chapter 11 Plan of*

*Reorganization* (as may be amended, supplemented or otherwise modified from time

to time, the "Plan"), attached to the Disclosure Statement as **Exhibit A**;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: SAExploration Holdings, Inc. (7100), SAExploration Sub, Inc. (8859), SAExploration, Inc. (9022), SAExploration Seismic Services (US), LLC (5057), and NES, LLC. The address of the Debtors' headquarters is: 1160 Dairy Ashford Road, Suite 160, Houston, TX 77079.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Plan, as applicable.

1

(iii) Approving certain procedures (the "Solicitation Procedures") for the solicitation and tabulation of votes to accept or reject the Plan, including:

    a.   the forms of ballots for submitting votes on the Plan;

    b.   the form and manner of notice to the Non-Voting Classes (the "Notice of Non-Voting Status");

    c.   the form and manner of notice in the Class 12 Opt-Out Notice to the Holders of Claims and Interests in Class 12 (SAE Holding Interests) (the "Class 12 Opt-Out Notice");

    d.   the form and manner of notice in the Unimpaired Accepting Class Opt-Out Notice to the Holders of Claims in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (Secured Tax Claims), and Class 7 (PPP Loan Claims)  (the "Unimpaired Accepting Opt-Out Notice" and together with the Class 12 Opt-Out Notice, the "Opt-Out Notices");

    e.   the form and manner of notice of the Combined Hearing; and

    f.   the Confirmation Timeline (as defined below); and

(iv) Approving certain procedures and instructions (the "Rights Offering Procedures") for exercising Subscription Rights substantially in the form attached to this Order as **Schedule 5**, including related dates and deadlines (the "Rights Offering Dates and Deadlines"), and the form of material necessary to consummate the Rights Offering under the terms of the Rights Offering Procedures (collectively, the "Rights Offering Materials");

all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to

28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing on the Motion; and all objections, if any, to the Motion have been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003 and is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor;

**It is hereby ORDERED THAT:**

1.      The Disclosure Statement is approved on a conditional basis.

2.      The Solicitation Procedures proposed by the Debtors for distribution of the Solicitation Packages as set forth in the Motion in soliciting acceptances and rejections of the Plan satisfy the requirements of the Bankruptcy Code and the Bankruptcy Rules and are approved.

3.      The following dates and deadlines for solicitation and confirmation of the Plan (the "Confirmation Timeline") are approved.

| Event | Deadline |
|---|---|
| Voting Record Date | September 8, 2020 |
| Complete Commencement of Plan Solicitation and Mailing of Combined Notice | September 18, 2020 |
| Plan Supplement Filing Deadline | October 12, 2020 at 5:00 p.m. (Prevailing Central Time) |
| Deadline to File Motion to Designate Votes | October 13, 2020 at 5:00 p.m. (Prevailing Central Time) |
| Plan Voting Deadline, Deadline to Object to final approval of Disclosure Statement and | October 19, 2020 at 5:00 p.m. (Prevailing Central Time) |

| Confirmation, and Release Opt Out Deadline | |
|---|---|
| Deadline to File Voting Affidavit | October 22, 2020 at 5:00 p.m. (Prevailing Central Time) |
| Deadline to file Consolidated Brief and Reply in Support of Confirmation | October 23, 2020 at 5:00 p.m. (Prevailing Central Time) |
| Combined Hearing on Final Approval of Disclosure Statement and Confirmation of Plan (the "Combined Hearing") | October 27, 2020 at 10:00 a.m. (Prevailing Central Time) |

4.      The Ballots for Credit Agreement Claims in Class 4, Term Loan Claims in Class 5, Convertible Notes Claims in Class 6, and for General Unsecured Claims in Class 8, substantially in the form attached hereto as **Schedules 1-1, 1-2, 1-3, and 1-4** respectively, are approved.

5.      **Class 4 Credit Agreement Claims**: The Claim amount of Class 4 Claims for voting purposes only will be established based on the amount of the applicable positions held by such Class 4 Claim Holder, as of the Voting Record Date, as evidenced by the applicable records provided by the Prepetition Credit Agreement Agent in electronic Microsoft Excel format to the Debtors or the Voting Agent no later than one (1) business day following the entry of this Order.

6.      **Class 5 Term Loan Claims**:  The Claim amount of Class 5 Claims for voting purposes only will be established based on the amount of the applicable positions held by such Class 5 Claim Holder, as of the Voting Record Date, as evidenced by the applicable records provided by the Prepetition Term Loan Agent in electronic Microsoft Excel format setting forth such Class 5 Claim Holder's name, mailing address with a contact person, and the outstanding principal amount of and accrued and unpaid prepetition interests on such Class 5 Claim Holder's loans (the "Prepetition Term Loan Lender List"), to the Debtors or the Voting Agent no later than two (2) business days following the entry of this Order.  The Prepetition Term Loan Agent is

hereby authorized to provide the Debtors or the Voting Agent the Prepetition Term Loan Lender List. For the avoidance of doubt, (i) the Debtors and the Voting Agent shall not distribute or cause to be distributed Solicitation Packages (or any Ballots) to the Prepetition Term Loan Agent, and (ii) the Prepetition Term Loan Agent shall not be responsible for the distribution of the Solicitation Packages (or any portion thereof) or the distribution, completion, tabulation, or return of any Ballots.

7.      **Class 6 Convertible Notes Claims**:  The Claim amount of Class 6 Claims for voting purposes only will be established based on the amount of the applicable positions held by such Class 6 Claim Holder, as of the Voting Record Date, as evidenced by the applicable records provided by the Prepetition Trustee in electronic Microsoft Excel format to the Debtors or the Voting Agent no later than one (1) business day following the entry of this Order.

8.      **Class 8 General Unsecured Claims**: Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, any Claim, and without prejudice to the Debtors' rights in any other context, each Claim is entitled to vote to accept or reject the Plan in an amount determined by the following procedures:

a.  if a Claim is deemed allowed under the Plan, an order of the Court or a stipulated agreement between the parties, such claim will be temporarily allowed for voting purposes in the deemed allowed amount set forth therein;

b.  if a claim for which a proof of claim has been filed by the Voting Record Date for unknown or undetermined amounts, or is wholly unliquidated, or contingent and such claim has not been allowed, such Claim shall be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00;

c.  if a Claim, for which a proof of claim was filed by the Voting Record Date, is listed as contingent, unliquidated, or disputed in part in the proof of claim, such Claim is temporarily allowed in the amount set forth in the proof of claim that is liquidated, non-contingent, and undisputed for voting purposes only, and not for purposes of allowance or distribution;

d.  if a Claim was listed in the Debtors' filed Schedules in an amount that is liquidated, non-contingent, and undisputed, and a proof of claim was not filed by the Voting

Record Date, such Claim is allowed for voting in the liquidated, non-contingent, undisputed amount set forth in the Debtors' filed Schedules;

e.  if a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim is temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

f.  if a Claim is listed in the Debtors' Schedules as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the Voting Record Date; or (ii) deemed timely filed by an order of the Court prior to the filed by the Voting Record Date; such Claim shall be entitled to vote at $1.00;

g.  proofs of claim filed for $0.00 are not entitled to vote;

h.  if the Debtors have served an objection or request for estimation as to a Claim at least ten (10) days before the Voting Deadline, such Claim is temporarily disallowed for voting purposes;

i.  for purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code separate Claims held by a single creditor in a particular Class shall be aggregated as if such creditor held one Claim against the Debtor in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan;

j.  notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the same Voting Class shall be provided with only one Solicitation Package and one ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims; and

k.  if a proof of claim has been amended by a later proof of claim that is filed on or prior to the Voting Record Date, the later filed amending claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier filed claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such amended claim. Except as otherwise ordered by the Court, any amendments to proofs of claim after the Voting Record Date shall not be considered for purposes of these tabulation rules.

9.  In tabulating the Ballots, the following procedures shall apply:

a.  any Ballot that is properly completed, executed and timely returned as directed, but does not indicate an acceptance or rejection of the Plan will not be counted as either a vote to accept or a vote to reject the Plan;

b.  any Ballot that is properly completed, executed and timely returned as directed, and indicates both an acceptance or rejection of the Plan will not be counted as either a vote to accept or a vote to reject the Plan;

c.  any unsigned Ballot will not be counted;

d.  any Ballot cast by a party that is not entitled to vote will not be counted as either a vote to accept or a vote to reject the Plan;

e.  if more than one Ballot voting the same claim is cast before the Voting Deadline, the last valid Ballot received before the Voting Deadline will be deemed to reflect the voter's intent and thus will supersede any prior Ballots;

f.  any Ballot transmitted to the Voting Agent by facsimile, electronic mail, or other means not specifically approved by this Court will not be counted; and

g.  Ballots received after the Voting Deadline will not be counted; *provided that* the Debtors may agree to extend the Voting Deadline.

None of the Debtors, the Voting Agent, or any other person or entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots, nor will any of them incur any liability for failure to provide such notification.

10.     The Debtors may waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting, and any such waivers shall be documented in the Voting Affidavit.

11.     The Notice of Non-Voting Status, substantially in the form attached hereto as **Schedule 3** is approved. The Debtors are authorized to send the Notice of Non-Voting Status to the Non-Voting Holders in lieu of sending copies of the Plan and Disclosure Statement.

12.     The Opt-Out Notices, substantially in the form attached hereto as **Schedules 4-1 and 4-2** are approved.  As stated in the Opt-Out Notices, Opt-Out Forms must be returned no later than October 19, 2020 at 5:00 p.m. (prevailing Central Time). The procedures for submission of Opt-Out Forms as stated in the Opt-Out Notices are approved.

13.     The procedures and instructions contained in the Rights Offering Procedures for exercising Subscription Rights, substantially in the form attached to this Order as **Schedule 5**,

including the Rights Offering Dates and Deadlines, and the Rights Offering Materials, are approved.

14.     Notwithstanding any provision herein to the contrary, no provision of the Plan, or any order confirming the Plan, (i) releases any non-debtor person or entity (including any Released Party) from any Claim or cause of action of the United States Securities and Exchange Commission (the "SEC"); or, (ii) enjoins, limits, impairs, or delays the SEC from commencing or continuing any Claims, causes of action, proceedings, or investigations against any non-debtor person or entity (including any Released Party) in any forum.

15.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

16.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rules 4001(d) and 6004(a) are waived.

17.     The Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

18.     This Court shall retain jurisdiction with respect to all matters arising from or related the implementation, interpretation, and enforcement of this Proposed Order.

Signed:  September 15, 2020

_____
Marvin Isgur
United States Bankruptcy Judge

## ATTACHMENTS TO PROPOSED ORDER

| Schedule | Description |
|---|---|
| 1-1 | Class 4 Ballot (Credit Agreement Claims) |
| 1-2 | Class 5 Ballot (Term Loan Claims) |
| 1-3 | Class 6 Ballot (Convertible Notes Claims) |
| 1-4 | Class 8 Ballot (General Unsecured Claims) |
| 2 | Combined Hearing Notice |
| 3 | Notice of Non-Voting Status |
| 4-1 | Class 12 (SAE Holdings Interests) Opt-Out Notice |
| 4-2 | Unimpaired Accepting Class Opt-Out Notice for Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (Secured Tax Claims), or Class 7 (PPP Loan Claims) |
| 5-1 | Rights Offering Procedures |
| 5-2 | Subscription Forms |

**<u>Schedule 1-1</u>**

**Form of Ballot for Class 4 Credit Agreement Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **In re:** | § |
| | § **Chapter 11** |
| | § |
| **SAEXPLORATION HOLDINGS, INC.,** *et al.*, | § **Case No. 20-34306 (MI)** |
| | § |
| | § **(Jointly Administered)** |
| Debtors.[1] | § |

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION**

**CLASS 4: CREDIT AGREEMENT CLAIMS**

> **THE VOTING DEADLINE TO**
> **ACCEPT OR REJECT THE PLAN IS 5:00 P.M.**
> **(PREVAILING CENTRAL TIME), ON OCTOBER 19, 2020**

**TO HAVE YOUR VOTE ON THE PLAN AND ANY OPT-OUT OF THE RELEASES COUNTED, YOU MUST SUBMIT YOUR VOTE AND DECISION TO OPT-OUT OF THE RELEASES (OR NOT) TO EPIQ CORPORATE RESTRUCTURING, LLC (THE "VOTING AGENT") SO THAT THE VOTING AGENT ACTUALLY RECEIVES THE BALLOT PRIOR TO 5:00 P.M. (PREVAILING CENTRAL TIME) ON OCTOBER 19, 2020 (THE "VOTING DEADLINE").**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting votes with respect to the *Debtors' First Amended Chapter 11 Plan of Reorganization* (as it may be amended from time to time, the "Plan") which is being proposed by the Debtors and which is described in the accompanying *Second Amended Disclosure Statement for the Debtors' Chapter 11 Plan of Reorganization* dated September 15, 2020 (as it may be amended from time to time, the "Disclosure Statement"). The United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, as well as certain procedures and materials for the solicitation of votes to accept or reject the Plan, pursuant to an order dated [●],

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: SAExploration Holdings, Inc. (7100), SAExploration Sub, Inc. (8859), SAExploration, Inc. (9022), SAExploration Seismic Services (US), LLC (5057), and NES, LLC. The address of the Debtors' headquarters is: 1160 Dairy Ashford Road, Suite 160, Houston, TX 77079.

2020. The Bankruptcy Court's provisional approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

You are receiving this ballot because the applicable records provided by the Prepetition Credit Agreement Agent list you as a holder of a Credit Agreement Claim. Accordingly, you have the right to vote to accept or reject the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you, whether or not you vote, if the Plan (a) is accepted by the holders of at least two-thirds in amount and more than one-half in number of the claims in each impaired Class of claims who vote on the Plan; and (b) otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan; and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

Your rights are described in the Disclosure Statement, which is accessible from the Debtors' restructuring website at https://dm.epiq11.com/SAExploration. If you need to obtain additional information or pleadings filed in these Chapter 11 Cases, you may (a) contact the Debtors' Voting Agent, Epiq Corporate Restructuring, LLC, by calling 1-866-897-6433(domestic and Canada) or 1-646-282-2500 (international) and requesting to speak with a member of the Solicitation Team, by email to tabulation@epiqglobal.com with a reference to "SAExploration" in the subject line, or by writing to SAExploration Holdings, Inc., c/o Epiq 10300 SW Allen Boulevard, Beaverton, OR 97005, or (b) download such documents (excluding the Ballots) from the Debtors' restructuring website at https://dm.epiq11.com/SAExploration. Copies of these documents may also be obtained for a fee by visiting the Bankruptcy Court's website at http://www.txs.uscourts.gov/bankruptcy. Please be advised that the Voting Agent is not permitted to provide legal advice.

This Ballot may not be used for any purpose other than casting a vote to accept or reject the Plan, making certain decisions regarding releases, and making certain certifications. If you believe that you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Voting Agent <u>immediately</u> at the address or telephone number set forth above.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 4.

**To have your vote counted, you must complete, sign and return this Ballot to the Voting Agent before the Voting Deadline.**

**Ballots should not be sent to the Debtors, the Consenting Creditors, the Creditors' Committee, the United States Trustee, the Bankruptcy Court or the Prepetition Credit Agreement Agent or their respective attorneys.**

**THIS BALLOT IS NOT A LETTER OF TRANSMITTAL AND MAY NOT BE USED FOR ANY PURPOSE OTHER THAN TO VOTE TO ACCEPT OR REJECT THE PLAN AND/OR OPT-OUT OF THE RELEASES (OR NOT).**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS <u>BEFORE</u> COMPLETING THIS BALLOT.**

**PLEASE REVIEW AND COMPLETE ITEMS 1 THROUGH 4 BELOW.**

**Item 1**. **Amount of Claim.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of a Credit Agreement Claim in Class 4 in the following unpaid principal amount:

| Class 4 |
|---|
| $_____ |

**Item 2**. **Vote on Plan.**

The Holder of the Claims set forth in Item 1 votes to (please check only <u>one</u>):

| ☐ **ACCEPT** (vote FOR) the Plan | ☐ **REJECT** (vote AGAINST) the Plan |
|---|---|

**The Plan consists of separate chapter 11 plans for each of the Debtors. Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.**

Any Ballot that is executed by the Holder of a Claim but is not marked to accept or reject the Plan or is marked both to accept and reject the Plan will not be counted.

**Item 3. Important Information Regarding the Releases of Claims by Holders of Claims or Interests.**

**IF YOU FAIL TO OPT-OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.F OF THE PLAN (SET FORTH BELOW) (THE "THIRD PARTY RELEASE") BY CHECKING THE OPT-OUT ELECTION BOX BELOW OR IF YOU FAIL TO SUBMIT THIS BALLOT, YOU WILL BE DEEMED TO PROVIDE SUCH RELEASES TO ALL RELEASED PARTIES.**

Article VIII.F *Releases by Holders of Claims and Interests*

**As of the Effective Date, to the fullest extent of the law, each Releasing Party is deemed to have released and discharged each Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law,**

equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), including any derivative claims, asserted on behalf of the Debtors, that the Debtors, their Estates or Affiliates, or the Reorganized Debtors or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions (including dividends paid), transactions pursuant and/or related to the Prepetition Credit Agreement, the Prepetition Term Loan Documents, the Prepetition Indenture, the Prepetition Convertible Notes, the Cash Collateral Orders (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Releasing Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective Date obligations of any party or Entity under the Plan (including the documents contemplated by the Plan Supplement) or any of the Definitive Documentation, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, actual fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to such releases.

**Relevant Definitions Related to Release Provision:**

*"Released Party"* means each of the following solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Consenting Creditors; (d) the First Lien Exit Facility Commitment Parties; (e) the Creditors' Committee and its past and current members in their capacities as such; (f) the Agents; (g) the Releasing Parties; and (h) with respect to each of the foregoing Entities under (a) through (g), such Entity's current and former direct and indirect Affiliates, and such Entity's and its current and former direct and indirect Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equityholders, officers, directors, managers, principals, members, employees, subcontractors, advisors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals; *provided, however*, that any Entities identified in the Schedule of Non-Released Entities shall not be Released Parties.  Notwithstanding the foregoing, any Entity that opts out of being a Releasing Party (as set forth in the definition thereof) shall not be deemed a Released Party hereunder.

*"Releasing Party"* means each of the following solely in its capacity as such: (a) Released Parties; (b) all Holders of Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out; and (c) with respect to each of the Entities under (a) and (b), such Entity's current and former direct and indirect Affiliates, and such Entities' and their current and former direct and indirect Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former officers, directors, managers, principals, members, employees, subcontractors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, each solely in their capacity as such.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

The Holder of the Claims set forth in Item 1 elects to:

☐ **Opt Out** of the Third Party Release

**Item 4. Certifications and Acknowledgements**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

(i)     that either: (A) the undersigned is the holder of the Claims being voted, or (B) the undersigned is an authorized signatory for a holder of the Claims being voted;

(ii)    that the undersigned has received a copy of the Disclosure Statement and the Plan;

(iii)   that no other Ballots with respect to the amount of the Claim identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claim, then any such earlier received Ballots are hereby revoked; and

(iv)    that the undersigned acknowledge(s) and understand(s) that, if this Ballot is validly executed but does not indicate either acceptance or rejection of the Plan, this Ballot will not be counted as having been cast.

_____
Name

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

**PLEASE PROMPTLY RETURN YOUR COMPLETED BALLOT.**

**BALLOTS MAY BE SUBMITTED VIA THE E-BALLOT PORTAL, IN THE RETURN ENVELOPE PROVIDED, OR AS DIRECTED BELOW.**

**IN ORDER TO COUNT, YOUR COMPLETED BALLOT MUST BE <u>RECEIVED</u> BY THE VOTING AGENT AS OF THE VOTING DEADLINE, WHICH IS 5:00 P.M. (PREVAILING CENTRAL TIME), ON OCTOBER 19, 2020.**

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* IN THE ENCLOSED REPLY ENVELOPE PROVIDED, OR BY <u>*ONLY ONE*</u> OF THE FOLLOWING RETURN METHODS:**

---

If by First Class mail:

    SAExploration – Ballot Processing
    c/o Epiq Corporate Restructuring, LLC
    P.O. Box 4422
    Beaverton, OR 97076-4422

---

If by overnight courier or hand delivery:

    SAExploration – Ballot Processing

    c/o Epiq Corporate Restructuring, LLC
    10300 SW Allen Boulevard
    Beaverton, OR 97005

---

By electronic, online submission:

    Please visit https://dm.epiq11.com/SAExploration Click on the "E-Ballot" section of the Debtors' website and follow the directions to submit your E-Ballot. If you choose to submit your Ballot via Epiq's E-Ballot system, you should <u>not</u> also return a hard copy of your Ballot.

    **IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

    **Unique E-Ballot ID#: _____**

    <u>"E-Balloting" is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile or email will not be counted.</u>

---

## VOTING INFORMATION AND INSTRUCTIONS
## FOR COMPLETING THE BALLOT

1.  The Debtors are soliciting votes with respect to the Plan, dated September 15, 2020 (as it may be amended from time to time).

2.  **The Bankruptcy Court may confirm the Plan and thereby bind you if, among other things, the Plan is confirmed. Please review the Disclosure Statement and Plan for more information.**

3.  In Item 1, please indicate the amount of your Claim for voting purposes. Your Claim amount may be pre-printed, in which case you are to review this amount and contact the Voting Agent if you believe your Claim amount for voting purposes has been listed in error.

4.  In the boxes provided in Item 2 of the Ballot, please indicate acceptance or rejection of the Plan.

5.  You may opt out of the release by Holders of Claims (*i.e.*, the Third Party Release) by checking the box provided in Item 3 of the Ballot. ***If you do not check the opt-out box or do not submit this Ballot, you are specifically consenting to the releases contained in the Plan. Such releases are contained in Section VIII.F of the Plan, which include the Release by Holders of Claims and Interests (i.e., the Third Party Release) of claims and causes of action against certain non-debtor entities.***

6.  If you conveyed more than one vote on the same Claim, the last valid vote received by the Voting Agent will be deemed to reflect your intent to either accept or reject the Plan. After the Voting Deadline, you may only change your vote with written approval from the Debtor.

7.  You must vote all of your Claim either to accept or reject the Plan and **may not** split your vote.

8.  Please be sure to sign and date your Ballot. If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Voting Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

9.  To ensure that your vote is counted, you must sign and return your Ballot to the Voting Agent prior to the Voting Deadline.

10. **The Voting Agent will NOT count the following Ballots (unless such defect is waived by the Debtors):**

      i.        any votes received after the Voting Deadline unless the Debtors shall have granted in writing an extension of the Voting Deadline prior to the Voting Deadline with respect to such vote;

      ii.      any vote cast by an entity that does not hold a Claim in a Voting Class as of the Voting Record Date;

      iii.     any vote submitted to any party other than the Voting Agent;

      iv.     any inconsistent or duplicate votes that are simultaneously cast with respect to the same Claim;

      v.       any vote superseded by another timely valid vote; or

      vi.     any vote that does not either accept or reject the Plan or any vote to both accept and reject the Plan.

11.     The attached Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

12.     The Ballot does <u>not</u> constitute and shall not be deemed a proof of Claim or Interest or an assertion of a Claim or Interest.

<div align="center">

**<u>PLEASE SUBMIT YOUR VOTE PROMPTLY</u>**

</div>

---

<div align="center">

**YOUR BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING DEADLINE, WHICH IS OCTOBER 19, 2020, AT 5:00 P.M. (PREVAILING CENTRAL TIME) TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN.**

</div>

---

<div align="center">

**IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY EMAIL AT TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "SAEXPLORATION" IN THE SUBJECT LINE OR BY TELEPHONE TO 1-866-897-6433 (DOMESTIC AND CANADA) OR 1-646-282-2500 (INTERNATIONAL) AND REQUESTING TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM.**

</div>

**<u>Schedule 1-2</u>**

**Form of Ballot for Class 5 Term Loan Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| | § |
| **In re:** | § **Chapter 11** |
| | § |
| **SAEXPLORATION HOLDINGS, INC.,** *et al.*, | § **Case No. 20-34306 (MI)** |
| | § |
| | § **(Jointly Administered)** |
| **Debtors.**[1] | § |

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION**

**CLASS 5: TERM LOAN CLAIMS**

> **THE VOTING DEADLINE TO**
> **ACCEPT OR REJECT THE PLAN IS 5:00 P.M.**
> **(PREVAILING CENTRAL TIME), ON OCTOBER 19, 2020**

**TO HAVE YOUR VOTE ON THE PLAN AND ANY OPT-OUT OF THE RELEASES COUNTED, YOU MUST SUBMIT YOUR VOTE AND DECISION TO OPT-OUT OF THE RELEASES (OR NOT) TO EPIQ CORPORATE RESTRUCTURING, LLC (THE "<u>VOTING AGENT</u>") SO THAT THE VOTING AGENT ACTUALLY RECEIVES THE BALLOT PRIOR TO 5:00 P.M. (PREVAILING CENTRAL TIME) ON OCTOBER 19, 2020 (THE "VOTING DEADLINE").**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") are soliciting votes with respect to the *Debtors' First Amended Chapter 11 Plan of Reorganization* (as it may be amended from time to time, the "<u>Plan</u>") which is being proposed by the Debtors and which is described in the accompanying *Second Amended Disclosure Statement for the Debtors' Chapter 11 Plan of Reorganization* dated September 15, 2020 (as it may be amended from time to time, the "<u>Disclosure Statement</u>"). The United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, as well as certain procedures and materials for the solicitation of votes to accept or reject the Plan, pursuant to an order dated [●], 2020. The Bankruptcy Court's provisional approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: SAExploration Holdings, Inc. (7100), SAExploration Sub, Inc. (8859), SAExploration, Inc. (9022), SAExploration Seismic Services (US), LLC (5057), and NES, LLC. The address of the Debtors' headquarters is: 1160 Dairy Ashford Road, Suite 160, Houston, TX 77079.

You are receiving this ballot because the applicable records provided by the Prepetition Term Loan Agent list you as a holder of a Term Loan Claim. Accordingly, you have the right to vote to accept or reject the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you, whether or not you vote, if the Plan (a) is accepted by the holders of at least two-thirds in amount and more than one-half in number of the claims in each impaired Class of claims who vote on the Plan; and (b) otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan; and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

Your rights are described in the Disclosure Statement, which is accessible from the Debtors' restructuring website at https://dm.epiq11.com/SAExploration. If you need to obtain additional information or pleadings filed in these Chapter 11 Cases, you may (a) contact the Debtors' Voting Agent, Epiq Corporate Restructuring, LLC, by calling 1-866-897-6433 (domestic and Canada) or 1-646-282-2500 (international) and requesting to speak with a member of the Solicitation Team, by email to tabulation@epiqglobal.com with a reference to "SAExploration" in the subject line, or by writing to SAExploration Holdings, Inc., c/o Epiq 10300 SW Allen Boulevard, Beaverton, OR 97005, or (b) download such documents (excluding the Ballots) from the Debtors' restructuring website at https://dm.epiq11.com/SAExploration. Copies of these documents may also be obtained for a fee by visiting the Bankruptcy Court's website at http://www.txs.uscourts.gov/bankruptcy. Please be advised that the Voting Agent is not permitted to provide legal advice.

This Ballot may not be used for any purpose other than casting a vote to accept or reject the Plan, making certain decisions regarding releases, and making certain certifications. If you believe that you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Voting Agent immediately at the address or telephone number set forth above.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 5.

**To have your vote counted, you must complete, sign and return this Ballot to the Voting Agent before the Voting Deadline.**

**Ballots should not be sent to the Debtors, the Consenting Creditors, the Creditors' Committee, the United States Trustee, the Bankruptcy Court or the Prepetition Term Loan Agent or their respective attorneys.**

**THIS BALLOT IS NOT A LETTER OF TRANSMITTAL AND MAY NOT BE USED FOR ANY PURPOSE OTHER THAN TO VOTE TO ACCEPT OR REJECT THE PLAN AND/OR OPT-OUT OF THE RELEASES (OR NOT).**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS <u>BEFORE</u> COMPLETING THIS BALLOT.**

## PLEASE REVIEW AND COMPLETE ITEMS 1 THROUGH 4 BELOW.

**Item 1**. Amount of Claim.

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of a Term Loan Claim in Class 5 in the following unpaid principal amount:

<div style="border:1px solid">

Class 5

$_____

</div>

**Item 2**. Vote on Plan.

The Holder of the Claims set forth in Item 1 votes to (please check only <u>one</u>):

| ☐ **ACCEPT** (vote FOR) the Plan | ☐ **REJECT** (vote AGAINST) the Plan |
| --- | --- |

**The Plan consists of separate chapter 11 plans for each of the Debtors. Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.**

Any Ballot that is executed by the Holder of a Claim but is not marked to accept or reject the Plan or is marked both to accept and reject the Plan will not be counted.

**Item 3. Important Information Regarding the Releases of Claims by Holders of Claims or Interests.**

**IF YOU FAIL TO OPT-OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.F OF THE PLAN (SET FORTH BELOW) (THE "THIRD PARTY RELEASE") BY CHECKING THE OPT-OUT ELECTION BOX BELOW OR IF YOU FAIL TO SUBMIT THIS BALLOT, YOU WILL BE DEEMED TO PROVIDE SUCH RELEASES TO ALL RELEASED PARTIES.**

Article VIII.F *Releases by Holders of Claims and Interests*

**As of the Effective Date, to the fullest extent of the law, each Releasing Party is deemed to have released and discharged each Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), including any derivative claims, asserted on behalf of the**

Debtors, that the Debtors, their Estates or Affiliates, or the Reorganized Debtors or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions (including dividends paid), transactions pursuant and/or related to the Prepetition Credit Agreement, the Prepetition Term Loan Documents, the Prepetition Indenture, the Prepetition Convertible Notes, the Cash Collateral Orders (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Releasing Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective Date obligations of any party or Entity under the Plan (including the documents contemplated by the Plan Supplement) or any of the Definitive Documentation, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, actual fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to such releases.

**Relevant Definitions Related to Release Provision:**

*"Released Party"* means each of the following solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Consenting Creditors; (d) the First Lien Exit Facility Commitment Parties; (e) the Creditors' Committee and its past and current members in their capacities as such; (f) the Agents; (g) the Releasing Parties; and (h) with respect to each of the foregoing Entities under (a) through (g), such Entity's current and former direct and indirect Affiliates, and such Entity's and its current and former direct and indirect Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equityholders, officers, directors, managers, principals, members, employees, subcontractors, advisors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals; *provided, however*, that any Entities identified in the Schedule of Non-Released Entities shall not be Released Parties.  Notwithstanding the foregoing, any Entity that opts out of being a Releasing Party (as set forth in the definition thereof) shall not be deemed a Released Party hereunder.

*"Releasing Party"* means each of the following solely in its capacity as such: (a) Released Parties; (b) all Holders of Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out; and (c) with respect to each of the Entities under (a) and (b), such Entity's current and former direct and indirect Affiliates, and such Entities' and their current and former direct and indirect Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former officers, directors, managers, principals, members, employees, subcontractors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, each solely in their capacity as such.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

The Holder of the Claims set forth in Item 1 elects to:

☐ **Opt Out** of the Third Party Release

## Item 4. Certifications and Acknowledgements

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

(i)      that either: (A) the undersigned is the holder of the Claims being voted, or (B) the undersigned is an authorized signatory for a holder of the Claims being voted;

(ii)      that the undersigned has received a copy of the Disclosure Statement and the Plan;

(iii)      that no other Ballots with respect to the amount of the Claim identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claim, then any such earlier received Ballots are hereby revoked; and

(iv)      that the undersigned acknowledge(s) and understand(s) that, if this Ballot is validly executed but does not indicate either acceptance or rejection of the Plan, this Ballot will not be counted as having been cast.

_____
Name

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

**PLEASE PROMPTLY RETURN YOUR COMPLETED BALLOT.**

**BALLOTS MAY BE SUBMITTED VIA THE E-BALLOT PORTAL, IN THE RETURN ENVELOPE PROVIDED, OR AS DIRECTED BELOW.**

**IN ORDER TO COUNT, YOUR COMPLETED BALLOT MUST BE <u>RECEIVED</u> BY THE VOTING AGENT AS OF THE VOTING DEADLINE, WHICH IS 5:00 P.M. (PREVAILING CENTRAL TIME), ON OCTOBER 19, 2020.**

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* IN THE ENCLOSED REPLY ENVELOPE PROVIDED, OR BY <u>*ONLY ONE*</u> OF THE FOLLOWING RETURN METHODS:**

| |
|---|
| If by First Class mail:<br><br>SAExploration – Ballot Processing<br>c/o Epiq Corporate Restructuring, LLC<br>P.O. Box 4422<br>Beaverton, OR 97076-4422 |
| If by overnight courier or hand delivery:<br><br><br>SAExploration – Ballot Processing<br><br>c/o Epiq Corporate Restructuring, LLC<br>10300 SW Allen Boulevard<br>Beaverton, OR 97005 |
| By electronic, online submission:<br><br>Please visit https://dm.epiq11.com/SAExploration Click on the "E-Ballot" section of the Debtors' website and follow the directions to submit your E-Ballot. If you choose to submit your Ballot via Epiq's E-Ballot system, you should <u>not</u> also return a hard copy of your Ballot.<br><br>**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**<br><br>**Unique E-Ballot ID#: _____**<br><br><u>"E-Balloting" is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile or email will not be counted.</u> |

## VOTING INFORMATION AND INSTRUCTIONS
## FOR COMPLETING THE BALLOT

1.  The Debtors are soliciting votes with respect to the Plan, dated September 15, 2020 (as it may be amended from time to time).

2.  **The Bankruptcy Court may confirm the Plan and thereby bind you if, among other things, the Plan is confirmed. Please review the Disclosure Statement and Plan for more information.**

3.  In Item 1, please indicate the amount of your Claim for voting purposes. Your Claim amount may be pre-printed, in which case you are to review this amount and contact the Voting Agent if you believe your Claim amount for voting purposes has been listed in error.

4.  In the boxes provided in Item 2 of the Ballot, please indicate acceptance or rejection of the Plan.

5.  You may opt out of the release by Holders of Claims (*i.e.*, the Third Party Release) by checking the box provided in Item 3 of the Ballot. *If you do not check the opt-out box or do not submit this Ballot, you are specifically consenting to the releases contained in the Plan. Such releases are contained in Section VIII.F of the Plan, which include the Release by Holders of Claims and Interests (i.e., the Third Party Release) of claims and causes of action against certain non-debtor entities.*

6.  If you conveyed more than one vote on the same Claim, the last valid vote received by the Voting Agent will be deemed to reflect your intent to either accept or reject the Plan. After the Voting Deadline, you may only change your vote with written approval from the Debtor.

7.  You must vote all of your Claim either to accept or reject the Plan and **may not** split your vote.

8.  Please be sure to sign and date your Ballot. If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Voting Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

9.  To ensure that your vote is counted, you must sign and return your Ballot to the Voting Agent prior to the Voting Deadline.

10. **The Voting Agent will NOT count the following Ballots (unless such defect is waived by the Debtors):**

      i.       any votes received after the Voting Deadline unless the Debtors shall have granted in writing an extension of the Voting Deadline prior to the Voting Deadline with respect to such vote;

      ii.      any vote cast by an entity that does not hold a Claim in a Voting Class as of the Voting Record Date;

      iii.    any vote submitted to any party other than the Voting Agent;

      iv.    any inconsistent or duplicate votes that are simultaneously cast with respect to the same Claim;

      v.      any vote superseded by another timely valid vote; or

      vi.    any vote that does not either accept or reject the Plan or any vote to both accept and reject the Plan.

11.    The attached Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

12.    The Ballot does <u>not</u> constitute and shall not be deemed a proof of Claim or Interest or an assertion of a Claim or Interest.

<div align="center"><strong><u>PLEASE SUBMIT YOUR VOTE PROMPTLY</u></strong></div>

---

<div align="center">

**YOUR BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING DEADLINE, WHICH IS OCTOBER 19, 2020, AT 5:00 P.M. (PREVAILING CENTRAL TIME) TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN.**

</div>

---

<div align="center">

**IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY EMAIL AT TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "SAEXPLORATION" IN THE SUBJECT LINE  OR BY TELEPHONE TO 1-866-897-6433 (DOMESTIC AND CANADA) OR 1-646-282-2500 (INTERNATIONAL) AND REQUESTING TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM.**

</div>

**<u>Schedule 1-3</u>**

**Form of Ballot for Class 6 Convertible Notes Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| | § |
| **In re:** | § **Chapter 11** |
| | § |
| **SAEXPLORATION HOLDINGS, INC.,** *et al.*, | § **Case No. 20-34306 (MI)** |
| | § |
| | § **(Jointly Administered)** |
| Debtors.[1] | § |

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION**

**CLASS 6: CONVERTIBLE NOTES CLAIMS**

---

**THE VOTING DEADLINE TO**
**ACCEPT OR REJECT THE PLAN IS 5:00 P.M.**
**(PREVAILING CENTRAL TIME), ON OCTOBER 19, 2020**

---

**TO HAVE YOUR VOTE ON THE PLAN AND ANY OPT-OUT OF THE RELEASES COUNTED, YOU MUST SUBMIT YOUR VOTE AND DECISION TO OPT-OUT OF THE RELEASES (OR NOT) TO EPIQ CORPORATE RESTRUCTURING, LLC (THE "VOTING AGENT") SO THAT THE VOTING AGENT ACTUALLY RECEIVES THE BALLOT PRIOR TO 5:00 P.M. (PREVAILING CENTRAL TIME) ON OCTOBER 19, 2020 (THE "VOTING DEADLINE").**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") are soliciting votes with respect to the *Debtors' First Amended Chapter 11 Plan of Reorganization* (as it may be amended from time to time, the "Plan") which is being proposed by the Debtors and which is described in the accompanying *Second Amended Disclosure Statement for the Debtors' Chapter 11 Plan of Reorganization* dated September 15, 2020 (as it may be amended from time to time, the "Disclosure Statement"). The United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, as well as certain procedures and materials for the solicitation of votes to accept or reject the Plan, pursuant to an order dated [●], 2020. The Bankruptcy Court's provisional approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: SAExploration Holdings, Inc. (7100), SAExploration Sub, Inc. (8859), SAExploration, Inc. (9022), SAExploration Seismic Services (US), LLC (5057), and NES, LLC. The address of the Debtors' headquarters is: 1160 Dairy Ashford Road, Suite 160, Houston, TX 77079.

You are receiving this ballot because the applicable records provided by the Prepetition Trustee list you as a holder of a Convertible Notes Claim. Accordingly, you have the right to vote to accept or reject the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you, whether or not you vote, if the Plan (a) is accepted by the holders of at least two-thirds in amount and more than one-half in number of the claims in each impaired Class of claims who vote on the Plan; and (b) otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan; and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

Your rights are described in the Disclosure Statement, which is accessible from the Debtors' restructuring website at https://dm.epiq11.com/SAExploration. If you need to obtain additional information or pleadings filed in these Chapter 11 Cases, you may (a) contact the Debtors' Voting Agent, Epiq Corporate Restructuring, LLC, by calling 1-866-897-6433(domestic and Canada) or 1-646-282-2500 (international) and requesting to speak with a member of the Solicitation Team, by email to tabulation@epiqglobal.com with a reference to "SAExploration" in the subject line, or by writing to SAExploration Holdings, Inc., c/o Epiq 10300 SW Allen Boulevard, Beaverton, OR 97005, or (b) download such documents (excluding the Ballots) from the Debtors' restructuring website at https://dm.epiq11.com/SAExploration. Copies of these documents may also be obtained for a fee by visiting the Bankruptcy Court's website at http://www.txs.uscourts.gov/bankruptcy. Please be advised that the Voting Agent is not permitted to provide legal advice.

This Ballot may not be used for any purpose other than casting a vote to accept or reject the Plan, making certain decisions regarding releases, and making certain certifications. If you believe that you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Voting Agent immediately at the address or telephone number set forth above.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 6.

**To have your vote counted, you must complete, sign and return this Ballot to the Voting Agent before the Voting Deadline.**

**Ballots should not be sent to the Debtors, the Consenting Creditors, the Creditors' Committee, the United States Trustee, the Bankruptcy Court or the Prepetition Trustee or their respective attorneys.**

**THIS BALLOT IS NOT A LETTER OF TRANSMITTAL AND MAY NOT BE USED FOR ANY PURPOSE OTHER THAN TO VOTE TO ACCEPT OR REJECT THE PLAN AND/OR OPT-OUT OF THE RELEASES (OR NOT).**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

**PLEASE REVIEW AND COMPLETE ITEMS 1 THROUGH 4 BELOW.**

**Item 1.** **Amount of Claim.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of a Convertible Notes Claim in Class 6 in the following unpaid principal amount:

Class 6

$_____

**Item 2.** **Vote on Plan.**

The Holder of the Claims set forth in Item 1 votes to (please check only <u>one</u>):

☐    **ACCEPT** (vote FOR) the Plan          ☐    **REJECT** (vote AGAINST) the Plan

**The Plan consists of separate chapter 11 plans for each of the Debtors. Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.**

Any Ballot that is executed by the Holder of a Claim but is not marked to accept or reject the Plan or is marked both to accept and reject the Plan will not be counted.

**Item 3. Important Information Regarding the Releases of Claims by Holders of Claims or Interests.**

**IF YOU FAIL TO OPT-OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.F OF THE PLAN (SET FORTH BELOW) (THE "<u>THIRD PARTY RELEASE</u>") BY CHECKING THE OPT-OUT ELECTION BOX BELOW OR IF YOU FAIL TO SUBMIT THIS BALLOT, YOU WILL BE DEEMED TO PROVIDE SUCH RELEASES TO ALL RELEASED PARTIES.**

Article VIII.F *Releases by Holders of Claims and Interests*

**As of the Effective Date, to the fullest extent of the law, each Releasing Party is deemed to have released and discharged each Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), including any derivative claims, asserted on behalf of the**

5

Debtors, that the Debtors, their Estates or Affiliates, or the Reorganized Debtors or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions (including dividends paid), transactions pursuant and/or related to the Prepetition Credit Agreement, the Prepetition Term Loan Documents, the Prepetition Indenture, the Prepetition Convertible Notes, the Cash Collateral Orders (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Releasing Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective Date obligations of any party or Entity under the Plan (including the documents contemplated by the Plan Supplement) or any of the Definitive Documentation, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, actual fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to such releases.

**Relevant Definitions Related to Release Provision:**

*"Released Party"* means each of the following solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Consenting Creditors; (d) the First Lien Exit Facility Commitment Parties; (e) the Creditors' Committee and its past and current members in their capacities as such; (f) the Agents; (g) the Releasing Parties; and (h) with respect to each of the foregoing Entities under (a) through (g), such Entity's current and former direct and indirect Affiliates, and such Entity's and its current and former direct and indirect Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equityholders, officers, directors, managers, principals, members, employees, subcontractors, advisors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals; *provided, however*, that any Entities identified in the Schedule of Non-Released Entities shall not be Released Parties.   Notwithstanding the foregoing, any Entity that opts out of being a Releasing Party (as set forth in the definition thereof) shall not be deemed a Released Party hereunder.

*"Releasing Party"* means each of the following solely in its capacity as such: (a) Released Parties; (b) all Holders of Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out; and (c) with respect to each of the Entities under (a) and (b), such Entity's current and former direct and indirect Affiliates, and such Entities' and their current and former direct and indirect Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former officers, directors, managers, principals, members, employees, subcontractors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, each solely in their capacity as such.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

The Holder of the Claims set forth in Item 1 elects to:

☐ **Opt Out** of the Third Party Release

## Item 4. Certifications and Acknowledgements

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

(i) that either: (A) the undersigned is the holder of the Claims being voted, or (B) the undersigned is an authorized signatory for a holder of the Claims being voted;

(ii) that the undersigned has received a copy of the Disclosure Statement and the Plan;

(iii) that no other Ballots with respect to the amount of the Claim identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claim, then any such earlier received Ballots are hereby revoked; and

(iv) that the undersigned acknowledge(s) and understand(s) that, if this Ballot is validly executed but does not indicate either acceptance or rejection of the Plan, this Ballot will not be counted as having been case.

_____
Name

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

**PLEASE PROMPTLY RETURN YOUR COMPLETED BALLOT.**

**BALLOTS MAY BE SUBMITTED VIA THE E-BALLOT PORTAL, IN THE RETURN ENVELOPE PROVIDED, OR AS DIRECTED BELOW.**

**IN ORDER TO COUNT, YOUR COMPLETED BALLOT MUST BE <u>RECEIVED</u> BY THE VOTING AGENT AS OF THE VOTING DEADLINE, WHICH IS 5:00 P.M. (PREVAILING CENTRAL TIME), ON OCTOBER 19, 2020.**

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* IN THE ENCLOSED REPLY ENVELOPE PROVIDED, OR BY <u>*ONLY ONE*</u> OF THE FOLLOWING RETURN METHODS:**

---

If by First Class mail:

    SAExploration – Ballot Processing
    c/o Epiq Corporate Restructuring, LLC
    P.O. Box 4422
    Beaverton, OR 97076-4422

---

If by overnight courier or hand delivery:

    SAExploration – Ballot Processing

    c/o Epiq Corporate Restructuring, LLC
    10300 SW Allen Boulevard
    Beaverton, OR 97005

---

By electronic, online submission:

    Please visit https://dm.epiq11.com/SAExploration Click on the "E-Ballot" section of the Debtors' website and follow the directions to submit your E-Ballot. If you choose to submit your Ballot via Epiq's E-Ballot system, you should <u>not</u> also return a hard copy of your Ballot.

    **IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

    **Unique E-Ballot ID#: _____**

    <u>"E-Balloting" is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile or email will not be counted.</u>

---

## VOTING INFORMATION AND INSTRUCTIONS
## FOR COMPLETING THE BALLOT

1.     The Debtors are soliciting votes with respect to the Plan, dated September 15, 2020 (as it may be amended from time to time).

2.     **The Bankruptcy Court may confirm the Plan and thereby bind you if, among other things, the Plan is confirmed. Please review the Disclosure Statement and Plan for more information.**

3.     In Item 1, please indicate the amount of your Claim for voting purposes. Your Claim amount may be pre-printed, in which case you are to review this amount and contact the Voting Agent if you believe your Claim amount for voting purposes has been listed in error.

4.     In the boxes provided in Item 2 of the Ballot, please indicate acceptance or rejection of the Plan.

5.     You may opt out of the release by Holders of Claims (*i.e.*, the Third Party Release) by checking the box provided in Item 3 of the Ballot. ***If you do not check the opt-out box or do not submit this Ballot, you are specifically consenting to the releases contained in the Plan. Such releases are contained in Section VIII.F of the Plan, which include the Release by Holders of Claims and Interests (i.e., the Third Party Release) of claims and causes of action against certain non-debtor entities.***

6.     If you conveyed more than one vote on the same Claim, the last valid vote received by the Voting Agent will be deemed to reflect your intent to either accept or reject the Plan. After the Voting Deadline, you may only change your vote with written approval from the Debtor.

7.     You must vote all of your Claim either to accept or reject the Plan and **may not** split your vote.

8.     Please be sure to sign and date your Ballot. If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Voting Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

9.     To ensure that your vote is counted, you must sign and return your Ballot to the Voting Agent prior to the Voting Deadline.

10.    **The Voting Agent will NOT count the following Ballots (unless such defect is waived by the Debtors):**

      i.        any votes received after the Voting Deadline unless the Debtors shall have granted in writing an extension of the Voting Deadline prior to the Voting Deadline with respect to such vote;

     ii.        any vote cast by an entity that does not hold a Claim in a Voting Class as of the Voting Record Date;

    iii.        any vote submitted to any party other than the Voting Agent;

    iv.        any inconsistent or duplicate votes that are simultaneously cast with respect to the same Claim;

     v.        any vote superseded by another timely valid vote; or

    vi.        any vote that does not either accept or reject the Plan or any vote to both accept and reject the Plan.

11.    The attached Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

12.    The Ballot does <u>not</u> constitute and shall not be deemed a proof of Claim or Interest or an assertion of a Claim or Interest.

<div align="center"><u>**PLEASE SUBMIT YOUR VOTE PROMPTLY**</u></div>

---

**YOUR BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING DEADLINE, WHICH IS OCTOBER 19, 2020, AT 5:00 P.M. (PREVAILING CENTRAL TIME) TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN.**

---

**IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY EMAIL AT TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "SAEXPLORATION" IN THE SUBJECT LINE  OR BY TELEPHONE TO 1-866-897-6433 (DOMESTIC AND CANADA) OR 1-646-282-2500 (INTERNATIONAL) AND REQUESTING TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM.**

## **Schedule 1-4**

**Form of Ballot for Class 8 General Unsecured Claims**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| | § |
| **In re:** | § **Chapter 11** |
| | § |
| **SAEXPLORATION HOLDINGS, INC.,** *et al.*, | § **Case No. 20-34306 (MI)** |
| | § |
| | § **(Jointly Administered)** |
| **Debtors.**[1] | § |

## BALLOT FOR VOTING TO ACCEPT OR REJECT
## THE DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION

### CLASS 8: GENERAL UNSECURED CLAIMS

> **THE VOTING DEADLINE TO
> ACCEPT OR REJECT THE PLAN IS 5:00 P.M.
> (PREVAILING CENTRAL TIME), ON OCTOBER 19, 2020**

**TO HAVE YOUR VOTE ON THE PLAN AND ANY OPT-OUT OF THE RELEASES COUNTED, YOU MUST SUBMIT YOUR VOTE AND DECISION TO OPT-OUT OF THE RELEASES (OR NOT) TO EPIQ CORPORATE RESTRUCTURING, LLC (THE "<u>VOTING AGENT</u>") SO THAT THE VOTING AGENT ACTUALLY RECEIVES THE BALLOT PRIOR TO 5:00 P.M. (PREVAILING CENTRAL TIME) ON OCTOBER 19, 2020 (THE "VOTING DEADLINE").**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") are soliciting votes with respect to the *Debtors' First Amended Chapter 11 Plan of Reorganization* (as it may be amended from time to time, the "<u>Plan</u>") which is being proposed by the Debtors and which is described in the accompanying *Second Amended Disclosure Statement for the Debtors' Chapter 11 Plan of Reorganization* dated September 15, 2020 (as it may be amended from time to time, the "<u>Disclosure Statement</u>"). The United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, as well as certain procedures and materials for the solicitation of votes to accept or reject the Plan, pursuant to an order dated [●], 2020. The Bankruptcy Court's provisional approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: SAExploration Holdings, Inc. (7100), SAExploration Sub, Inc. (8859), SAExploration, Inc. (9022), SAExploration Seismic Services (US), LLC (5057), and NES, LLC. The address of the Debtors' headquarters is: 1160 Dairy Ashford Road, Suite 160, Houston, TX 77079.

You are receiving this ballot because either (i) you filed a proof of claim against one or more of the Debtors, or (ii) one or more of the Debtors lists you as a holder of a general unsecured claim on the Debtors' books and records. Accordingly, you have the right to vote to accept or reject the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you, whether or not you vote, if the Plan (a) is accepted by the holders of at least two-thirds in amount and more than one-half in number of the claims in each impaired Class of claims who vote on the Plan; and (b) otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan; and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

Your rights are described in the Disclosure Statement, which is accessible from the Debtors' restructuring website at https://dm.epiq11.com/SAExploration. If you need to obtain additional information or pleadings filed in these Chapter 11 Cases, you may (a) contact the Debtors' Voting Agent, Epiq Corporate Restructuring, LLC, by calling 1-866-897-6433(domestic and Canada) or 1-646-282-2500 (international) and requesting to speak with a member of the Solicitation Team, by email to tabulation@epiqglobal.com with a reference to "SAExploration" in the subject line, or by writing to SAExploration Holdings, Inc., c/o Epiq 10300 SW Allen Boulevard, Beaverton, OR 97005, or (b) download such documents (excluding the Ballots) from the Debtors' restructuring website at https://dm.epiq11.com/SAExploration. Copies of these documents may also be obtained for a fee by visiting the Bankruptcy Court's website at http://www.txs.uscourts.gov/bankruptcy. Please be advised that the Voting Agent is not permitted to provide legal advice.

This Ballot may not be used for any purpose other than casting a vote to accept or reject the Plan, making certain decisions regarding releases, and making certain certifications. If you believe that you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Voting Agent immediately at the address or telephone number set forth above.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 8.

**To have your vote counted, you must complete, sign and return this Ballot to the Voting Agent before the Voting Deadline.**

**Ballots should not be sent to the Debtors, the Consenting Creditors, the Creditors' Committee, the United States Trustee, the Bankruptcy Court, the Prepetition Credit Agreement Agent, the Prepetition Term Loan Agent, the Prepetition Trustee or their respective attorneys.**

**THIS BALLOT IS NOT A LETTER OF TRANSMITTAL AND MAY NOT BE USED FOR ANY PURPOSE OTHER THAN TO VOTE TO ACCEPT OR REJECT THE PLAN AND/OR OPT-OUT OF THE REALEASES (OR NOT).**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS <u>BEFORE</u> COMPLETING THIS BALLOT.**

**PLEASE REVIEW AND COMPLETE ITEMS 1 THROUGH 4 BELOW.**

**Item 1**. Amount of Claim.

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of a General Unsecured Claim in Class 8 in the following unpaid principal amount:

```
┌─────────────────────────────────────┐
│                                      │
│              Class 8                 │
│                                      │
│        $ _____            │
│                                      │
│     Debtor: _____         │
│                                      │
└─────────────────────────────────────┘
```

**Item 2**. Vote on Plan.

The Holder of the Claims set forth in Item 1 votes to (please check only <u>one</u>):

| ☐ **ACCEPT** (vote FOR) the Plan | ☐ **REJECT** (vote AGAINST) the Plan |
|---|---|

Any Ballot that is executed by the Holder of a Claim but is not marked to accept or reject the Plan or is marked both to accept and reject the Plan will not be counted.

**Item 3. Important Information Regarding the Releases of Claims by Holders of Claims or Interests.**

**IF YOU FAIL TO OPT-OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.F OF THE PLAN (SET FORTH BELOW) (THE "<u>THIRD PARTY RELEASE</u>") BY CHECKING THE OPT-OUT ELECTION BOX BELOW OR IF YOU FAIL TO SUBMIT THIS BALLOT, YOU WILL BE DEEMED TO PROVIDE SUCH RELEASES TO ALL RELEASED PARTIES.**

Article VIII.F *Releases by Holders of Claims and Interests*

**As of the Effective Date, to the fullest extent of the law, each Releasing Party is deemed to have released and discharged each Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), including any derivative claims, asserted on behalf of the Debtors, that the Debtors, their Estates or Affiliates, or the Reorganized Debtors or their**

5

Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions (including dividends paid), transactions pursuant and/or related to the Prepetition Credit Agreement, the Prepetition Term Loan Documents, the Prepetition Indenture, the Prepetition Convertible Notes, the Cash Collateral Orders (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Releasing Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective Date obligations of any party or Entity under the Plan (including the documents contemplated by the Plan Supplement) or any of the Definitive Documentation, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, actual fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to such releases.

**<u>Relevant Definitions Related to Release Provision:</u>**

*"Released Party"* means each of the following solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Consenting Creditors; (d) the First Lien Exit Facility Commitment Parties; (e) the Creditors' Committee and its past and current members in their capacities as such; (f) the Agents; (g) the Releasing Parties; and (h) with respect to each of the foregoing Entities under (a) through (g), such Entity's current and former direct and indirect Affiliates, and such Entity's and its current and former direct and indirect Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equityholders, officers, directors, managers, principals, members, employees, subcontractors, advisors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals; *provided, however*, that any Entities identified in the Schedule of Non-Released Entities shall not be Released Parties. Notwithstanding the foregoing, any Entity that opts out of being a Releasing Party (as set forth in the definition thereof) shall not be deemed a Released Party hereunder.

*"Releasing Party"* means each of the following solely in its capacity as such: (a) Released Parties; (b) all Holders of Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out; and (c) with respect to each of the Entities under (a) and (b), such Entity's current and former direct and indirect Affiliates, and such Entities' and their current and former direct and indirect Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former officers, directors, managers, principals, members, employees, subcontractors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, each solely in their capacity as such.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

The Holder of the Claims set forth in Item 1 elects to:

☐ **Opt Out** of the Third Party Release

**Item 4. Certifications and Acknowledgements**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

(i)    that either: (A) the undersigned is the holder of the Claims being voted, or (B) the undersigned is an authorized signatory for a holder of the Claims being voted;

(ii)    that the undersigned has received a copy of the Disclosure Statement and the Plan;

(iii)    that no other Ballots with respect to the amount of the Claim identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claim, then any such earlier received Ballots are hereby revoked; and

(iv)    that the undersigned acknowledge(s) and understand(s) that, if this Ballot is validly executed but does not indicate either acceptance or rejection of the Plan, this Ballot will not be counted as having been case.

_____
Name

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

**PLEASE PROMPTLY RETURN YOUR COMPLETED BALLOT.**

**BALLOTS MAY BE SUBMITTED VIA THE E-BALLOT PORTAL, IN THE RETURN ENVELOPE PROVIDED, OR AS DIRECTED BELOW.**

**IN ORDER TO COUNT, YOUR COMPLETED BALLOT MUST BE <u>RECEIVED</u> BY THE VOTING AGENT AS OF THE VOTING DEADLINE, WHICH IS 5:00 P.M. (PREVAILING CENTRAL TIME), ON OCTOBER 19, 2020.**

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* IN THE ENCLOSED REPLY ENVELOPE PROVIDED, OR BY <u>*ONLY ONE*</u> OF THE FOLLOWING RETURN METHODS:**

---

<u>If by First Class mail:</u>

SAExploration – Ballot Processing
c/o Epiq Corporate Restructuring, LLC
P.O. Box 4422
Beaverton, OR 97076-4422

---

<u>If by overnight courier or hand delivery:</u>

SAExploration – Ballot Processing

c/o Epiq Corporate Restructuring, LLC
10300 SW Allen Boulevard
Beaverton, OR 97005

---

<u>By electronic, online submission:</u>

Please visit https://dm.epiq11.com/SAExploration
Click on the "E-Ballot" section of the Debtors'
website and follow the directions to submit your E-
Ballot. If you choose to submit your Ballot via Epiq's
E-Ballot system, you should <u>not</u> also return a hard
copy of your Ballot.

**IMPORTANT NOTE: You will need the following
information to retrieve and submit your
customized E-Ballot:**

**Unique E-Ballot ID#: _____**

<u>"E-Balloting" is the sole manner in which Ballots will be
accepted via electronic or online transmission. Ballots
submitted by facsimile or email will not be counted.</u>

---

9

## VOTING INFORMATION AND INSTRUCTIONS
## FOR COMPLETING THE BALLOT

1.  The Debtors are soliciting votes with respect to the Plan, dated September 15, 2020 (as it may be amended from time to time).

2.  **The Bankruptcy Court may confirm the Plan and thereby bind you if, among other things, the Plan is confirmed. Please review the Disclosure Statement and Plan for more information.**

3.  In Item 1, please indicate the amount of your Claim for voting purposes. Your Claim amount may be pre-printed, in which case you are to review this amount and contact the Voting Agent if you believe your Claim amount for voting purposes has been listed in error.

4.  In the boxes provided in Item 2 of the Ballot, please indicate acceptance or rejection of the Plan.

5.  You may opt out of the release by Holders of Claims (*i.e.*, the Third Party Release) by checking the box provided in Item 3 of the Ballot. *If you do not check the opt-out box or do not submit this Ballot, you are specifically consenting to the releases contained in the Plan. Such releases are contained in Section VIII.F of the Plan, which include the Release by Holders of Claims and Interests (i.e., the Third Party Release) of claims and causes of action against certain non-debtor entities.*

6.  If you conveyed more than one vote on the same Claim, the last valid vote received by the Voting Agent will be deemed to reflect your intent to either accept or reject the Plan. After the Voting Deadline, you may only change your vote with written approval from the Debtor.

7.  You must vote all of your Claim either to accept or reject the Plan and **may not** split your vote.

8.  Please be sure to sign and date your Ballot. If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Voting Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

9.  To ensure that your vote is counted, you must sign and return your Ballot to the Voting Agent prior to the Voting Deadline.

10. **The Voting Agent will NOT count the following Ballots (unless such defect is waived by the Debtors):**

i.       any votes received after the Voting Deadline unless the Debtors shall have granted in writing an extension of the Voting Deadline prior to the Voting Deadline with respect to such vote;

ii.      any vote cast by an entity that does not hold a Claim in a Voting Class as of the Voting Record Date;

iii.     any vote submitted to any party other than the Voting Agent;

iv.      any inconsistent or duplicate votes that are simultaneously cast with respect to the same Claim;

v.       any vote superseded by another timely valid vote; or

vi.      any vote that does not either accept or reject the Plan or any vote to both accept and reject the Plan.

11.    The attached Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

12.    The Ballot does <u>not</u> constitute and shall not be deemed a proof of Claim or Interest or an assertion of a Claim or Interest.

<u>**PLEASE SUBMIT YOUR VOTE PROMPTLY**</u>

---

**YOUR BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE VOTING DEADLINE, WHICH IS OCTOBER 19, 2020, AT 5:00 P.M. (PREVAILING CENTRAL TIME) TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN.**

---

**IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY EMAIL AT TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "SAEXPLORATION" IN THE SUBJECT LINE  OR BY TELEPHONE TO 1-866-897-6433 (DOMESTIC AND CANADA) OR 1-646-282-2500 (INTERNATIONAL) AND REQUESTING TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM.**

**<u>Schedule 2</u>**

**Combined Hearing Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| | § |
| **In re:** | § **Chapter 11** |
| | § |
| **SAEXPLORATION HOLDINGS, INC.,** *et al.*, | § **Case No. 20-34306 (MI)** |
| | § |
| | § **(Jointly Administered)** |
| Debtors.[1] | § |

**NOTICE OF (I) COMMENCEMENT OF**
**CHAPTER 11 BANKRUPTCY CASES, (II) HEARING ON APPROVAL OF**
**DISCLOSURE STATEMENT AND CONFIRMATION OF CHAPTER 11 PLAN, AND**
**(III) OBJECTION DEADLINES, AND SUMMARY OF DEBTORS' CHAPTER 11 PLAN**

1.       On August 27, 2020 (the "Petition Date"), SAExploration Holdings, Inc. and its affiliated debtors, as debtors and debtors in possession (collectively, the "Debtors"), each commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").

2.       On the Petition Date, the Debtors filed a plan of reorganization (as amended, the "Plan")[2] and a proposed disclosure statement (as amended, the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of the Bankruptcy Code. On September 15, 2020, the Debtors filed the *Second Amended Disclosure Statement for the Debtors' First Amended Chapter 11 Plan of Reorganization* ( as amended, the "Disclosure Statement") and the *Debtors' First Amended Plan of Reorganization* (as amended, the "Plan"). Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' voting agent, Epiq Corporate Restructuring, LLC (the "Voting Agent"), at https://dm.epiq11.com/SAExploration. Copies of the Plan and Disclosure Statement may also be obtained by calling the Voting Agent at (855) 917-3588 (Toll-Free United States) or (503) 520-4451 (international) or by email to tabulation@epiqglobal.com with a reference to "SAExploration" in the subject line.

3.       The Debtors are proposing a restructuring that will deleverage their capital structure to reduce the go-forward cost of capital for their otherwise healthy businesses. This deleveraging will enhance the Debtors' long-term growth prospects and competitive position vis-à-vis its peer companies, greatly improve its leverage ratio and cash flows, and allow the Debtors to emerge from the chapter 11 cases as a stronger, reorganized group of entities better able to capitalize on an improving oil and gas industry.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: SAExploration Holdings, Inc. (7100), SAExploration Sub, Inc. (8859), SAExploration, Inc. (9022), SAExploration Seismic Services (US), LLC (5057), and NES, LLC. The address of the Debtors' headquarters is: 1160 Dairy Ashford Road, Suite 160, Houston, TX 77079.

[2] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Plan.

4.      As described in more detail in the *Declaration of Michael Faust in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), the Debtors' reorganization includes: (i) entry into a First Lien Exit Facility (the "First Lien Exit Facility") in an aggregate amount of $15 million, on the terms set forth in the First Lien Exit Facility Term Sheet attached to the Restructuring Support Agreement as **Exhibit B** and otherwise as approved pursuant to the terms of the Definitive Documents; (ii) conducting a rights offering (the "Rights Offering") pursuant to which all eligible holders of Credit Agreement Claims, the Term Loan Claims, and Prepetition Convertible Notes will be offered the opportunity to purchase loans to be advanced under the First Lien Exit Facility and equity in reorganized SAE, in each case in the amounts and in accordance with the Rights Offering Procedures and the Plan, with the Rights Offering backstopped by certain of the Consenting Creditors pursuant to the backstop commitment agreement (the "Backstop Agreement") attached to the Restructuring Support Agreement as **Exhibit I**; (iii) the satisfaction of the Prepetition Credit Agreement Claims through the entry into a Second Lien Exit Facility (the "Second Lien Exit Facility") in an aggregate amount of $21.4 million, on the terms set forth in the Second Lien Exit Facility Term Sheet attached to the Restructuring Support Agreement as **Exhibit C** and otherwise as approved pursuant to the terms of the Definitive Documents; (iv) the conversion of the Prepetition Term Loan Claims and the Prepetition Convertible Notes to new equity in SAE, subject to dilution by the New First Lien Exit Facility Equity, the First Lien Exit Facility Put Option Premium, and the Management Incentive Plan; (v) a cash pot of $100,000 for General Unsecured Claims; (vi) reinstatement of the PPP Loan Claims; and (vii) the grant of a new Management Incentive Plan on the terms described in the MIP Term Sheet attached to the Restructuring Support Agreement as **Exhibit D** and otherwise as approved pursuant to the terms of the Definitive Documents (the "Management Incentive Plan").

## Information Regarding Plan

5.      On [•], 2020, the Court approved the following Confirmation Timeline:

| Event | Deadline |
|---|---|
| Voting Record Date | September 8, 2020 |
| Completion of Plan Solicitation and Mailing of Combined Notice | September 18, 2020 |
| Plan Supplement Filing Deadline | October 12, 2020 at 5:00 p.m. (Prevailing Central Time) |
| Deadline to File Motion to Designate Votes | October 13, 2020 at 5:00 p.m. (Prevailing Central Time) |
| Plan Voting Deadline, Deadline to Object to final approval of Disclosure Statement and Confirmation, and Release Opt Out Deadline | October 19, 2020 at 5:00 p.m. (Prevailing Central Time) |
| Deadline to File Voting Affidavit | October 22, 2020 at 5:00 p.m. (Prevailing Central Time) |

3

| Deadline to file Consolidated Brief and Reply in Support of Confirmation | October 23, 2020 at 5:00 p.m. (Prevailing Central Time) |
|---|---|
| Combined Hearing on Final Approval of Disclosure Statement and Confirmation of Plan (the "Combined Hearing") | October 27, 2020 at 10:00 a.m. (Prevailing Central Time) |

6.     Any objections to the Disclosure Statement and/or Plan must be: (i) in writing, (ii) filed with the Clerk of the Court together with proof of service thereof, (iii) set forth the name of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors, and state the legal and factual basis for such objection, and (iv) conform to the applicable Bankruptcy Rules and the Bankruptcy Local Rules.

## Summary of Plan[3]

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Entitled to Vote | Approx. % Recovery |
|---|---|---|---|---|---|
| 1 | Other Priority Claims | In full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each Holder thereof shall receive (i) payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim or (ii) such other treatment as may otherwise be agreed to by such Holder, the Debtors, and the Requisite Creditors. | Unimpaired | No (Deemed to Accept) | 100% |
| 2 | Other Secured Claims | Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for its Allowed Other Secured Claim, each such Holder shall receive, at the Debtors' election with the consent of the Requisite Creditors, either (i) Cash equal to the full Allowed amount of its Claim, (ii) Reinstatement of such Holder's Allowed Other Secured Claim, or (iii) the return or abandonment of the collateral securing such | Unimpaired | No (Deemed to Accept) | 100% |

---

[3] The statements contained herein are summaries of the provisions contained in the Disclosure Statement and the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. For a more detailed description of the Plan, please refer to the Disclosure Statement. Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Entitled to Vote | Approx. % Recovery |
|---|---|---|---|---|---|
| | | Allowed Other Secured Claim to such Holder. | | | |
| 3 | Secured Tax Claims | Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for its Allowed Secured Tax Claim, each such Holder shall receive, at the Debtors' election with the consent of the Requisite Creditors, either (i) Cash equal to the full Allowed amount of its Claim, (ii) Reinstatement of such Holder's Allowed Secured Tax Claim, or (iii) the return or abandonment of the collateral securing such Allowed Secured Tax Claim to such Holder. | Unimpaired | No (Deemed to Accept) | 100% |
| 4 | Credit Agreement Claims | Except to the extent that a Holder of an Allowed Credit Agreement Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for its Allowed Credit Agreement Claim, each such Holder shall receive (i) its Pro Rata share of participation in the Second Lien Exit Facility in an amount equal to such Allowed Credit Agreement Claim; (ii) the right to purchase pursuant to the Rights Offering up to its Pro Rata share (measured by reference to the aggregate amount of Allowed Credit Agreement Claims) of 78% of (A) the term loans under the First Lien Exit Facility and (B) the New First Lien Exit Facility Equity; and the payment in full in Cash on the Effective Date of all Accrued Interest as of the Effective Date. | Impaired | Yes | 65% – 70% |
| 5 | Term Loan Claims | Except to the extent that a Holder of an Allowed Term Loan Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for its Allowed Term Loan Claim, each such Holder shall receive (i) its Pro Rata share (measured by reference to the aggregate amount of Allowed Term Loan Claims) of 60% of the New Equity under the Plan, subject to dilution by the (a) New First Lien Exit Facility Equity;(b) New Equity issued pursuant to the First Lien Exit Facility Put | Impaired | Yes | 1.1% – 2.4% |

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Entitled to Vote | Approx. % Recovery |
|---|---|---|---|---|---|
| | | Option Premium and (c) awards related to the New Equity issued under the Management Incentive Plan, and (ii) the right to purchase pursuant to the Rights Offering up to its Pro Rata share (measured by reference to the aggregate amount of Allowed Term Loan Claims) of 12.5% of (A) the term loans under the First Lien Exit Facility and (B) the New First Lien Exit Facility Equity. | | | |
| 6 | Convertible Notes Claims | Except to the extent that a Holder of an Allowed Convertible Notes Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for its Allowed Convertible Notes Claim, each such Holder shall receive (i) its Pro Rata share (measured by reference to the aggregate amount of Allowed Convertible Notes Claims) of 40% of the New Equity under the Plan, subject to dilution by the (a) New First Lien Exit Equity, (b) New Equity issued pursuant to the First Lien Exit Facility Put Option Premium and (c) awards related to the New Equity issued under the Management Incentive Plan, and (ii) the right to purchase pursuant to the Rights Offering up to its Pro Rata share (measured by reference to the aggregate amount of Allowed Convertible Notes Claims) of 9.5% of (A) the term loans under the First Lien Exit Facility and (B) the New First Lien Exit Facility Equity. | Impaired | Yes | 0.4% – 0.8% |
| 7 | PPP Loan Claims | Except to the extent that a Holder of an Allowed PPP Loan Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of each Allowed PPP Loan Claim and in exchange for each Allowed PPP Loan Claim, the Allowed PPP Loan Claims shall be Reinstated as of the Effective Date. | Unimpaired | No (Deemed to Accept) | N/A |
| 8 | General Unsecured Claims | Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of each Allowed General Unsecured Claim and of and in exchange for each Allowed General | Impaired | Yes | 9.1% – |

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Entitled to Vote | Approx. % Recovery |
|---|---|---|---|---|---|
| | | Unsecured Claim, each such Holder shall receive from the General Unsecured Claims Distribution the lesser of (i) payment in full in Cash of the unpaid portion of such Allowed General Unsecured Claim, and (ii) its Pro Rata share of the General Unsecured Claims Distribution on the Effective Date. | | | 11.1%[4] |
| 9 | Section 510(b) Claims | Section 510(b) Claims, if any, shall be discharged, canceled, released, and extinguished as of the Effective Date, and shall be of no further force or effect, and Holders of Section 510(b) Claims shall not receive any distribution on account of such Section 510(b) Claims. | Impaired | No (Deemed to Reject) | 0% |
| 10 | Intercompany Claims | Intercompany Claims shall be Reinstated as of the Effective Date or, at the Reorganized Debtors' option, shall be cancelled. No distribution shall be made on account of any Intercompany Claims other than in the ordinary course of business of the Reorganized Debtors, as applicable. For the avoidance of doubt, Intercompany Claims that are Reinstated as of the Effective Date, if any, shall be subordinated in all respects to the First Lien Exit Facility and the Second Lien Exit Facility. | Unimpaired / Impaired | No (Deemed to Either Accept or Reject) | N/A |
| 11 | Intercompany Interests | Intercompany Interests shall be Reinstated as of the Effective Date or, at the Reorganized Debtors' option, shall be cancelled. No distribution shall be made on account of any Intercompany Interests.<br><br>No distributions on account of Intercompany Interests are being made to the Holders of such Intercompany Interests. Instead, to the extend Intercompany Interests are Reinstated under the Plan, such Reinstatement is solely for the purposes of administrative convenience, for the ultimate benefit of the Holders of the New Equity, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the Holders of Allowed Claims. For the | Unimpaired / Impaired | No (Deemed to Either Accept or Reject) | N/A |

---

[4] Recovery percentage assumed $50,000 in General Unsecured Claim Administrator fees.

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Entitled to Vote | Approx. % Recovery |
|---|---|---|---|---|---|
| | | avoidance of doubt, to the extent Reinstated pursuant to the Plan, on and after the Effective Date, all Intercompany Interests shall continue to be owned by the Reorganized Debtor that corresponds to the Debtor that owned such Intercompany Interests prior to the Effective Date. | | | |
| 12 | SAE Holdings Interests | On the Effective Date, or as soon thereafter as reasonably practicable, all SAE Holdings Interests will be extinguished and the Holders of SAE Holdings Interests shall not receive or retain any distribution, property, or other value on account of their SAE Holdings Interests. | Impaired | No (Deemed to Reject) | 0% |

### Non-Voting Status of Holders of Certain Claims and Interests

7.      The Plan provides that each holder of a Claim in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (Secured Tax Claims), and Class 7 (PPP Loan Claims) are unimpaired. Pursuant to section 1126(f) of the Bankruptcy Code, the holders of Claims in each of the foregoing Classes are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote. The Plan provides that each holder of a Claim or Interest in Class 9 (Section 510(b) Claims) and Class 12 (SAE Holdings Interests) are impaired and deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Finally, Class 10 (Intercompany Claims) and Class 11 (Intercompany Interests) are not entitled to vote because they are either unimpaired if they are reinstated, or impaired and not receiving any property if they are cancelled. As explained above, the Voting agent will provide you with copies of the Disclosure Statement and Plan, free of charge.

### Notice Regarding Certain Release, Exculpation, and Injunction Provisions in Plan

PLEASE BE ADVISED THAT THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING:

Article VIII.E *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, their Estates, and the Reorganized Debtors from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), including any derivative claims, asserted on behalf of the Debtors, that the Debtors, their Estates or Affiliates, or the**

Reorganized Debtors or their Affiliates, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions (including dividends paid), transactions pursuant and/or related to the Prepetition Credit Agreement, Prepetition Term Loan Documents, the Prepetition Indenture, the Prepetition Convertible Notes, the Cash Collateral Orders (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective Date obligations of any party or Entity under the Plan (including the documents contemplated by the Plan Supplement) or any of the Definitive Documentation, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, actual fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors set forth in this Article VIII.E, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Debtors or their Estates asserting any claim or cause of action released pursuant to such releases.

Article VIII.F *Releases by Holders of Claims and Interests*

**As of the Effective Date, to the fullest extent of the law, each Releasing Party is deemed to have released and discharged each Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), including any derivative claims, asserted on behalf of the Debtors, that the Debtors, their Estates or Affiliates, or the Reorganized Debtors or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions (including dividends paid), transactions pursuant and/or related to the Prepetition Credit Agreement, the Prepetition Term Loan Documents, the Prepetition Indenture, the Prepetition Convertible Notes, the Cash Collateral Orders (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Releasing Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective Date obligations of any party or Entity under the Plan (including the documents contemplated by the Plan Supplement) or any of the Definitive Documentation, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, actual fraud, or willful misconduct.**

**Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties;**

**(2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to such releases.**

Article VIII.G *Exculpation*

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the solicitation of votes with respect to this Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in or out-of-court restructuring efforts, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, actual fraud, or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

Article VIII.H *Injunction*

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.E or Article VIII.F of the Plan, discharged pursuant to Article VIII.B of the Plan, or are subject to exculpation pursuant to Article VIII.G of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the**

**Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan.**

<u>**Relevant Definitions Related to Release and Exculpation Provisions:**</u>

"***Exculpated Party***" means the Debtors, the Reorganized Debtors, each of the Debtors' and the Reorganized Debtors' current and former Affiliates, and each of the Debtors' and the Reorganized Debtors' and their current and former Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former officers, directors, managers, principals, members, employees, subcontractors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, each solely in their capacity as such; *provided, however*, that any Entity identified in the Schedule of Non-Released Entities shall not be deemed an Exculpated Party.

"***Released Party***" means each of the following solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Consenting Creditors; (d) the First Lien Exit Facility Commitment Parties; (e) the Creditors' Committee and its past and current members in their capacities as such; (f) the Agents; (g) the Releasing Parties; and (h) with respect to each of the foregoing Entities under (a) through (g), such Entity's current and former direct and indirect Affiliates, and such Entity's and its current and former direct and indirect Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equityholders, officers, directors, managers, principals, members, employees, subcontractors, advisors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals; *provided, however*, that any Entities identified in the Schedule of Non-Released Entities shall not

be Released Parties.  Notwithstanding the foregoing, any Entity that opts out of being a Releasing Party (as set forth in the definition thereof) shall not be deemed a Released Party hereunder.

*"Releasing Party"* means each of the following solely in its capacity as such: (a) Released Parties; (b) all Holders of Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out; and (c) with respect to each of the Entities under (a) and (b), such Entity's current and former direct and indirect Affiliates, and such Entities' and their current and former direct and indirect Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former officers, directors, managers, principals, members, employees, subcontractors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, each solely in their capacity as such.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

## Section 341 Meeting

8.     A meeting of creditors pursuant to section 341(a) of the Bankruptcy Code will be convened on October 8, 2020 at 2:00 p.m. CT.

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

[*Remainder of Page Intentionally Blank*]

Dated: [        ], 2020
Houston, Texas

BY ORDER OF THE COURT

Respectfully submitted,

_____
John F. Higgins (TX 09597500)
Eric M. English (TX 24062714)
M. Shane Johnson (TX 24083263)
Megan Young-John (TX 24088700)
**PORTER HEDGES LLP**
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
eenglish@porterhedges.com
sjohnson@porterhedges.com
myoungjohn@porterhedges.com

*Proposed Counsel to Debtors and Debtors in Possession*

**<u>Schedule 3</u>**

**Notice of Non-Voting Status**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| | § |
| **In re:** | § **Chapter 11** |
| | § |
| **SAEXPLORATION HOLDINGS, INC.,** *et al.*, | § **Case No. 20-34306 (MI)** |
| | § |
| | § **(Jointly Administered)** |
| **Debtors.**[1] | § |

## NOTICE OF NON-VOTING STATUS

**PLEASE TAKE NOTICE THAT** the above-captioned debtors and debtors in possession (collectively, the "Debtors") have commenced solicitation of votes to accept the *Debtors' First Amended Chapter 11 Plan of Reorganization* (as it may be amended from time to time, the "Plan"). Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' voting agent, Epiq Corporate Restructuring, LLC (the "Voting Agent"), at https://dm.epiq11.com/SAExploration. Copies of the Plan and Disclosure Statement may also be obtained by calling the Voting Agent at (855) 917-3588 (Toll-Free United States) or (503) 520-4451 (international) and requesting to speak with a member of the Solicitation Team, or by email to tabulation@epiqglobal.com with a reference to "SAExploration" in the subject line.

**You are receiving this notice (the "Notice") because, according to the Debtors' books and records, you are a holder of a Claim against or an Interest in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (Secured Tax Claims), Class 7 (PPP Loan Claims), Class 9 (Section 510(b) Claims), Class 10 (Intercompany Claims), Class 11 (Intercompany Interests), and Class 12 (SAE Holdings Interests) under the Plan. Pursuant to the terms of the Plan, Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (Secured Tax Claims), and Class 7 (PPP Loan Claims) are unimpaired and therefore, pursuant to section 1126(f) of title 11 of the United States Code (the "Bankruptcy Code"), deemed to have accepted the Plan and are not entitled to vote on the Plan. Class 9 (Section 510(b) Claims) and Class 12 (SAE Holdings Interests) are impaired and not receiving any distribution under the Plan and therefore, pursuant to section 1126(g) of the Bankruptcy Code, are deemed to have rejected the Plan and are not entitled to vote on the Plan. At the Debtors' election, Class 10 (Intercompany Claims) and Class 11 (Intercompany Interests) are either unimpaired, or impaired and not receiving any distribution, and therefore are not entitled to vote on the Plan.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: SAExploration Holdings, Inc. (7100), SAExploration Sub, Inc. (8859), SAExploration, Inc. (9022), SAExploration Seismic Services (US), LLC (5057), and NES, LLC. The address of the Debtors' headquarters is: 1160 Dairy Ashford Road, Suite 160, Houston, TX 77079.

The deadline for filing objections to confirmation of the Plan is October 19, 2020, at 5:00 p.m. (Prevailing Central Time) (the "Objection Deadline"). All Objections must be (i) in writing, (ii) filed with the Clerk of the Court together with proof of service thereof, (iii) set forth the name of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors, and state the legal and factual basis for such objection, and (iv) conform to the applicable Bankruptcy Rules and the Bankruptcy Local Rules.

If you have any questions concerning this Notice, the Disclosure Statement, or the Plan, or wish to obtain a paper copy of the Plan, the Disclosure Statement, or any exhibits to such documents, please contact the Voting Agent.

<div style="text-align: center;">

**Notice Regarding Certain Release,**
**Exculpation, and Injunction Provisions in the Plan**

</div>

PLEASE BE ADVISED THAT THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING:

Article VIII.E *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, their Estates, and the Reorganized Debtors from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), including any derivative claims, asserted on behalf of the Debtors, that the Debtors, their Estates or Affiliates, or the Reorganized Debtors or their Affiliates, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions (including dividends paid), transactions pursuant and/or related to the Prepetition Credit Agreement, Prepetition Term Loan Documents, the Prepetition Indenture, the Prepetition Convertible Notes, the Cash Collateral Orders (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support**

Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective Date obligations of any party or Entity under the Plan (including the documents contemplated by the Plan Supplement) or any of the Definitive Documentation, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, actual fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by the Debtors set forth in this Article VIII.E, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Debtors or their Estates asserting any claim or cause of action released pursuant to such releases.

Article VIII.F *Releases by Holders of Claims and Interests*

As of the Effective Date, to the fullest extent of the law, each Releasing Party is deemed to have released and discharged each Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), including any derivative claims, asserted on behalf of the Debtors, that the Debtors, their Estates or Affiliates, or the Reorganized Debtors or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions (including dividends paid), transactions pursuant and/or related to the Prepetition Credit Agreement, the Prepetition Term Loan Documents, the Prepetition Indenture, the Prepetition Convertible Notes, the Cash Collateral Orders (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual

arrangements between any Debtor and any Releasing Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Releasing Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective Date obligations of any party or Entity under the Plan (including the documents contemplated by the Plan Supplement) or any of the Definitive Documentation, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, actual fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to such releases.

Article VIII.G *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claim, Cause of Action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the solicitation of votes with respect to this Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other

**agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Debtors' in or out-of-court restructuring efforts, the Disclosure Statement, the Plan, the Restructuring Support Agreement, the related agreements, instruments, and other documents (including the Definitive Documentation), the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, actual fraud, or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties (to the extent applicable) have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

Article VIII.H *Injunction*

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.E or Article VIII.F of the Plan, discharged pursuant to Article VIII.B of the Plan, or are subject to exculpation pursuant to Article VIII.G of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to**

6

the Disclosure Statement or set forth in the Plan Supplement, to the extent finalized) executed to implement the Plan.

**Relevant Definitions Related to Release and Exculpation Provisions:**

"***Exculpated Party***" means the Debtors, the Reorganized Debtors, each of the Debtors' and the Reorganized Debtors' current and former Affiliates, and each of the Debtors' and the Reorganized Debtors' and their current and former Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former officers, directors, managers, principals, members, employees, subcontractors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, each solely in their capacity as such; *provided, however*, that any Entity identified in the Schedule of Non-Released Entities shall not be deemed an Exculpated Party.

"***Released Party***" means each of the following solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Consenting Creditors; (d) the First Lien Exit Facility Commitment Parties; (e) the Creditors' Committee and its past and current members in their capacities as such; (f) the Agents; (g) the Releasing Parties; and (h) with respect to each of the foregoing Entities under (a) through (g), such Entity's current and former direct and indirect Affiliates, and such Entity's and its current and former direct and indirect Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equityholders, officers, directors, managers, principals, members, employees, subcontractors, advisors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals; *provided, however*, that any Entities identified in the Schedule of Non-Released Entities shall not be Released Parties.  Notwithstanding the foregoing, any Entity that opts out of being a Releasing Party (as set forth in the definition thereof) shall not be deemed a Released Party hereunder.

"***Releasing Party***" means each of the following solely in its capacity as such: (a) Released Parties; (b) all Holders of Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out; and (c) with respect to each of the Entities under (a) and (b), such Entity's current and former direct and indirect Affiliates, and such Entities' and their current and former direct and indirect Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former officers, directors, managers, principals, members, employees, subcontractors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, each solely in their capacity as such.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

Dated: [            ], 2020
Houston, Texas

BY ORDER OF THE COURT


Respectfully submitted,

_____
John F. Higgins (TX 09597500)
Eric M. English (TX 24062714)
M. Shane Johnson (TX 24083263)
Megan Young-John (TX 24088700)
**PORTER HEDGES LLP**
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
eenglish@porterhedges.com
sjohnson@porterhedges.com
myoungjohn@porterhedges.com

*Proposed Counsel to Debtors and Debtors in Possession*

## <u>Schedule 4-1</u>

**Class 12 (SAE Holdings Interests) Opt-Out Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| | § |
| **In re:** | § **Chapter 11** |
| | § |
| **SAEXPLORATION HOLDINGS, INC.,** *et al.*, | § **Case No. 20-34306 (MI)** |
| | § |
| | § **(Jointly Administered)** |
| Debtors.[1] | § |

## OPT-OUT NOTICE TO THE HOLDERS OF CLAIMS AND INTERESTS IN CLASS 12 (SAE HOLDING INTERESTS)

**PLEASE TAKE NOTICE THAT** the above-captioned debtors and debtors in possession (collectively, the "Debtors") have commenced solicitation of votes to accept the *Debtors' First Amended Chapter 11 Plan of Reorganization* (as it may be amended from time to time, the "Plan"). Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' voting agent, Epiq Corporate Restructuring, LLC (the "Voting Agent"), at https://dm.epiq11.com/SAExploration. Copies of the Plan and Disclosure Statement may also be obtained by calling the Voting Agent at (855) 917-3588 (Toll-Free United States) or (503) 520-4451 (international) and requesting to speak with a member of the Solicitation Team, or by email to tabulation@epiqglobal.com with a reference to "SAExploration" in the subject line.

**PLEASE TAKE FURTHER NOTICE THAT** you are a Holder or potential Holder of a Class 12 Claim or Interest (SAE Holdings Interests) against the Debtors that is **not** entitled to vote on the Plan due to the nature and treatment of such Claim under the Plan as Class 12 Claims are impaired under the Plan and conclusively presumed to have rejected the Plan pursuant to 1126(g) of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to confirmation of the Plan is **October 19, 2020, at 5:00 p.m. (Prevailing Central Time)** (the "Objection Deadline"). All Objections must be (i) in writing, (ii) filed with the Clerk of the Court together with proof of service thereof, (iii) set forth the name of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors, and state the legal and factual basis for such objection, and (iv) conform to the applicable Bankruptcy Rules and the Bankruptcy Local Rules.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: SAExploration Holdings, Inc. (7100), SAExploration Sub, Inc. (8859), SAExploration, Inc. (9022), SAExploration Seismic Services (US), LLC (5057), and NES, LLC. The address of the Debtors' headquarters is: 1160 Dairy Ashford Road, Suite 160, Houston, TX 77079.

If you have any questions concerning this Notice, the Disclosure Statement, or the Plan, or wish to obtain a paper copy of the Plan, the Disclosure Statement, or any exhibits to such documents, please contact the Voting Agent.

**PLEASE TAKE FURTHER NOTICE THAT <u>ARTICLE VIII</u> OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS.**

**ALTHOUGH YOU ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN, THE OPT-OUT FORM ATTACHED HERETO PROVIDES YOU WITH THE OPTION TO <u>NOT GRANT</u> THE VOLUNTARY THIRD-PARTY RELEASE CONTAINED IN <u>ARTICLE VIII.F</u> OF THE PLAN (THE "<u>THIRD PARTY RELEASE</u>"):**

Article VIII.F *Releases by Holders of Claims and Interests*

**As of the Effective Date, to the fullest extent of the law, each Releasing Party is deemed to have released and discharged each Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), including any derivative claims, asserted on behalf of the Debtors, that the Debtors, their Estates or Affiliates, or the Reorganized Debtors or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions (including dividends paid), transactions pursuant and/or related to the Prepetition Credit Agreement, the Prepetition Term Loan Documents, the Prepetition Indenture, the Prepetition Convertible Notes, the Cash Collateral Orders (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Releasing Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other property pursuant to the Plan, the Definitive Documentation, or upon any other act or**

**omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective Date obligations of any party or Entity under the Plan (including the documents contemplated by the Plan Supplement) or any of the Definitive Documentation, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, actual fraud, or willful misconduct.**

**Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to such releases.**

<u>**Relevant Definitions Related to Release and Exculpation Provisions:**</u>

"**_Released Party_**" means each of the following solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Consenting Creditors; (d) the First Lien Exit Facility Commitment Parties; (e) the Creditors' Committee and its past and current members in their capacities as such; (f) the Agents; (g) the Releasing Parties; and (h) with respect to each of the foregoing Entities under (a) through (g), such Entity's current and former direct and indirect Affiliates, and such Entity's and its current and former direct and indirect Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equityholders, officers, directors, managers, principals, members, employees, subcontractors, advisors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals; _provided, however_, that any Entities identified in the Schedule of Non-Released Entities shall not be Released Parties. Notwithstanding the foregoing, any Entity that opts out of being a Releasing Party (as set forth in the definition thereof) shall not be deemed a Released Party hereunder.

"**_Releasing Party_**" means each of the following solely in its capacity as such: (a) Released Parties; (b) all Holders of Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out; and (c) with respect to each of the Entities under (a) and (b), such Entity's current and former direct and indirect Affiliates, and such Entities' and their current and former direct and indirect Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former officers, directors, managers, principals, members, employees, subcontractors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives,

management companies, fund advisors, and other professionals, each solely in their capacity as such.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

\*     \*     \*

THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES AND TO PROVIDE YOU WITH THE ATTACHED OPT-OUT FORM WITH RESPECT TO THE THIRD PARTY RELEASES INCLUDED IN THE PLAN. IF YOU HAVE QUESTIONS REGARDING YOUR RIGHTS UNDER THE PLAN OR ANYTHING STATED HEREIN OR THEREIN, YOU MAY CONTACT THE NOTICE AND CLAIMS AGENT OR DEBTORS' COUNSEL AT THE ADDRESSES PROVIDED BELOW.

Dated: [            ], 2020
Houston, Texas

BY ORDER OF THE COURT

Respectfully submitted,

_____
John F. Higgins (TX 09597500)
Eric M. English (TX 24062714)
M. Shane Johnson (TX 24083263)
Megan Young-John (TX 24088700)
**PORTER HEDGES LLP**
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
eenglish@porterhedges.com
sjohnson@porterhedges.com
myoungjohn@porterhedges.com

*Proposed Counsel to Debtors and Debtors in Possession*

**OPTIONAL: RELEASE OPT-OUT FORM**

You are receiving this opt-out form (the "Opt-Out Form") because you may be a Holder of a Claim or Interest that is not entitled to vote on the *Debtors' First Amended Chapter 11 Plan of Reorganization* (as it may be amended from time to time, the "Plan"). Holders of Claims and Interests are deemed to grant the Third-Party Release set forth in the Notice unless a Holder affirmatively opts out of the Third-Party Release or timely objects to the Third-Party Release on or before **October 19, 2020 at 5:00 p.m., prevailing Central Time,** and such objection is not resolved before confirmation.

You must clearly sign and return this Opt-Out Form in the enclosed pre-addressed, pre-paid envelope or via first class mail, overnight courier, or hand delivery to SAExploration Holdings, Inc., c/o Epiq 10300 SW Allen Boulevard, Beaverton, OR 97005, or (B) by completing, signing, and returning the Opt-Out Form via the E-Ballot portal located at https://dm.epiq11.com/SAExploration, to ensure that your hard copy Opt-Out Form is counted.

**Item 1.** Opt Out Election

      ☐  The undersigned holder hereby OPTS OUT of the Third-Party Release
          set forth in Article VIII.F of the Plan.

**Item 2.** **Certifications and Acknowledgements**

By signing this Opt-Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors:

    (i)      that either: (A) the undersigned is a Holder of Claims or Interests in Class 12 (SAE Holdings Interests), or (B) the undersigned is an authorized signatory for a Holder of Claims or Interests in Class 12 (SAE Holdings Interests); and

    (ii)     that the undersigned has received a copy of the *Opt Out Notice* and that this Opt-Out Form is submitted pursuant to the terms and conditions set forth therein.

[*Remainder of Page Intentionally Blank*]

---
Name of Holder

---
Signature

---
If by Authorized Agent, Name and Title

---
Name of Institution

---
Street Address

---
City, State, Zip Code

---
Telephone Number

---
Date Completed

**IF YOU WISH TO OPT OUT, PLEASE COMPLETE, SIGN AND DATE THIS OPT-OUT FORM AND RETURN BEFORE THE OPT OUT DEADLINE VIA FIRST CLASS MAIL OR IN THE REPLY ENVELOPE PROVIDED, OVERNIGHT COURIER, OR HAND DELIVERY TO THE BELOW ADDRESS OR YOU MAY SUBMIT YOUR OPT-OUT ELECTION ONLINE.**

**<u>HARD COPY PAPER SUBMISSION:</u>**

Send the completed and signed Opt-Out Form via first class mail, hand delivery or overnight courier to:

**SAExploration Holdings, Inc.**
**c/o Epiq Corporate Restructuring, LLC**
**10300 SW Allen Boulevard**
**Beaverton, OR 97005**

**ONLINE SUBMISSION OF THE OPT-OUT FORM:**

You may submit your Opt-Out Form electronically online through the E-Balloting Portal found on the Debtors' case information website: https://dm.epiq11.com/SAExploration. Instructions to access the E-Balloting Portal can be found below.

1. Please visit https://dm.epiq11.com/SAExploration.

2. Click on the "Submit E-Ballot" section of the Debtors' website.

3. Follow the directions to submit your Opt-Out Form. If you choose to submit your Opt-Out Form via the E-Balloting Portal, you should <u>not</u> return a hard copy of your Opt-Out Form.

**THE "E-OPT-OUT" PORTAL IS THE SOLE MANNER IN WHICH OPT-OUT FORMS MAY BE DELIVERED VIA ELECTRONIC TRANSMISSION. OPT-OUT FORMS SUBMITTED VIA FACSIMILE OR EMAIL WILL NOT BE COUNTED.**

**Schedule 4-2**

**Unimpaired Accepting Class Opt-Out Notice for**
**Class 1 (Other Priority Claims), 2 (Other Secured Claims), 3 (Secured Tax Claims),**
**and 7 (PPP Loan Claims)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| | § |
| **In re:** | § **Chapter 11** |
| | § |
| **SAEXPLORATION HOLDINGS, INC.,** *et al.*, | § **Case No. 20-34306 (MI)** |
| | § |
| | § **(Jointly Administered)** |
| **Debtors.**[1] | § |

**UNIMPAIRED ACCEPTING CLASS OPT-OUT NOTICE**
**TO THE HOLDERS OF CLAIMS AND INTERESTS IN**
**CLASS 1 (OTHER PRIORITY CLAIMS), CLASS 2 (OTHER SECURED CLAIMS),**
**CLASS 3 (SECURED TAX CLAIMS) AND 7 (PPP LOAN CLAIMS)**

      **PLEASE TAKE NOTICE THAT** the above-captioned debtors and debtors in possession (collectively, the "Debtors") have commenced solicitation of votes to accept the *Debtors' First Amended Chapter 11 Plan of Reorganization* (as it may be amended from time to time, the "Plan"). Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' voting agent, Epiq Corporate Restructuring, LLC (the "Voting Agent"), at https://dm.epiq11.com/SAExploration. Copies of the Plan and Disclosure Statement may also be obtained by calling the Voting Agent at (855) 917-3588 (Toll-Free United States) or (503) 520-4451 (international) and requesting to speak with a member of the Solicitation Team, or by email to tabulation@epiqglobal.com with a reference to "SAExploration" in the subject line.

      **PLEASE TAKE FURTHER NOTICE THAT** you are a Holder or potential Holder of a Claim in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (Secured Tax Claims), or Class 7 (PPP Loan Claims) against the Debtors that is **not** entitled to vote on the Plan due to the nature and treatment of such Claim under the Plan as Claims in Classes 1, 2, 3, and 7 are unimpaired under the Plan and conclusively presumed to have rejected the Plan pursuant to 1126(g) of the Bankruptcy Code.

      **PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to confirmation of the Plan is **October 19, 2020, at 5:00 p.m. (Prevailing Central Time)** (the "Objection Deadline"). All Objections must be (i) in writing, (ii) filed with the Clerk of the Court together with proof of service thereof, (iii) set forth the name of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors, and state the legal and factual basis for such objection, and (iv) conform to the applicable Bankruptcy Rules and the Bankruptcy Local Rules.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: SAExploration Holdings, Inc. (7100), SAExploration Sub, Inc. (8859), SAExploration, Inc. (9022), SAExploration Seismic Services (US), LLC (5057), and NES, LLC. The address of the Debtors' headquarters is: 1160 Dairy Ashford Road, Suite 160, Houston, TX 77079.

If you have any questions concerning this Notice, the Disclosure Statement, or the Plan, or wish to obtain a paper copy of the Plan, the Disclosure Statement, or any exhibits to such documents, please contact the Voting Agent.

**PLEASE TAKE FURTHER NOTICE THAT <u>ARTICLE VIII</u> OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS.**

**ALTHOUGH YOU ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN, THE OPT-OUT FORM ATTACHED HERETO PROVIDES YOU WITH THE OPTION TO <u>NOT GRANT</u> THE VOLUNTARY THIRD-PARTY RELEASE CONTAINED IN <u>ARTICLE VIII.F</u> OF THE PLAN (THE "<u>THIRD PARTY RELEASE</u>"):**

Article VIII.F *Releases by Holders of Claims and Interests*

**As of the Effective Date, to the fullest extent of the law, each Releasing Party is deemed to have released and discharged each Released Party from any and all Claims, Causes of Action, obligations, suits, judgments, damages, demands, losses, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), including any derivative claims, asserted on behalf of the Debtors, that the Debtors, their Estates or Affiliates, or the Reorganized Debtors or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions (including dividends paid), transactions pursuant and/or related to the Prepetition Credit Agreement, the Prepetition Term Loan Documents, the Prepetition Indenture, the Prepetition Convertible Notes, the Cash Collateral Orders (and any payments or transfers in connection therewith), any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Releasing Party, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Restructuring Support Agreement, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, or any Restructuring Transaction, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Releasing Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the related agreements, instruments, and other documents (including the Definitive Documentation), the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to this Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities or other**

property pursuant to the Plan, the Definitive Documentation, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, (i) the releases set forth herein do not release any post-Effective Date obligations of any party or Entity under the Plan (including the documents contemplated by the Plan Supplement) or any of the Definitive Documentation, and (ii) nothing in this provision shall, nor shall it be deemed to, release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be the result of such Released Party's gross negligence, actual fraud, or willful misconduct.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Holders of Claims and Interests set forth in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Debtors and their Estates; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; (6) an essential component of the Plan and the Restructuring Transactions; and (7) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to such releases.

## Relevant Definitions Related to Release and Exculpation Provisions:

"*Released Party*" means each of the following solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Consenting Creditors; (d) the First Lien Exit Facility Commitment Parties; (e) the Creditors' Committee and its past and current members in their capacities as such; (f) the Agents; (g) the Releasing Parties; and (h) with respect to each of the foregoing Entities under (a) through (g), such Entity's current and former direct and indirect Affiliates, and such Entity's and its current and former direct and indirect Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equityholders, officers, directors, managers, principals, members, employees, subcontractors, advisors, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals; *provided, however*, that any Entities identified in the Schedule of Non-Released Entities shall not be Released Parties. Notwithstanding the foregoing, any Entity that opts out of being a Releasing Party (as set forth in the definition thereof) shall not be deemed a Released Party hereunder.

"*Releasing Party*" means each of the following solely in its capacity as such: (a) Released Parties; (b) all Holders of Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out; and (c) with respect to each of the Entities under (a) and (b), such Entity's current and former direct and indirect Affiliates, and such Entities' and their current and former direct and indirect Affiliates' current and former directors, managers, officers, managed accounts and funds, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former officers, directors, managers, principals, members, employees, subcontractors, agents, advisory board members, financial

advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, each solely in their capacity as such.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

\*        \*        \*

THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES AND TO PROVIDE YOU WITH THE ATTACHED OPT-OUT FORM WITH RESPECT TO THE THIRD PARTY RELEASES INCLUDED IN THE PLAN. IF YOU HAVE QUESTIONS REGARDING YOUR RIGHTS UNDER THE PLAN OR ANYTHING STATED HEREIN OR THEREIN, YOU MAY CONTACT THE NOTICE AND CLAIMS AGENT OR DEBTORS' COUNSEL AT THE ADDRESSES PROVIDED BELOW.

Dated: [            ], 2020
Houston, Texas

BY ORDER OF THE COURT


Respectfully submitted,


_____
John F. Higgins (TX 09597500)
Eric M. English (TX 24062714)
M. Shane Johnson (TX 24083263)
Megan Young-John (TX 24088700)
**PORTER HEDGES LLP**
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
eenglish@porterhedges.com
sjohnson@porterhedges.com
myoungjohn@porterhedges.com

*Proposed Counsel to Debtors and Debtors in Possession*

**OPTIONAL: RELEASE OPT-OUT FORM**

You are receiving this opt-out form (the "Opt-Out Form") because you may be a Holder of a Claim or Interest that is not entitled to vote on the *Debtors' First Amended Chapter 11 Plan of Reorganization* (as it may be amended from time to time, the "Plan"). Holders of Claims and Interests are deemed to grant the Third-Party Release set forth in the Notice unless a Holder affirmatively opts out of the Third-Party Release or timely objects to the Third-Party Release on or before **October 19, 2020 at 5:00 p.m., prevailing Central Time,** and such objection is not resolved before confirmation.

You must clearly sign and return this Opt-Out Form in the enclosed pre-addressed, pre-paid envelope or via first class mail, overnight courier, or hand delivery to SAExploration Holdings, Inc., c/o Epiq 10300 SW Allen Boulevard, Beaverton, OR 97005, or (B) by completing, signing, and returning the Opt-Out Form via the E-Ballot portal located at https://dm.epiq11.com/SAExploration, to ensure that your hard copy Opt-Out Form is counted.

**Item 1.** Opt Out Election

      ☐ The undersigned holder hereby OPTS OUT of the Third-Party Release
           set forth in Article VIII.F of the Plan.

**Item 2.** **Certifications and Acknowledgements**

By signing this Opt-Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors:

(i)      that either: (A) the undersigned is a Holder of Claims or Interests in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (Secured Tax Claims), or Class 7 (PPP Loan Claims), or (B) the undersigned is an authorized signatory for a Holder of Claims or Interests in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (Secured Tax Claims), or Class 7 (PPP Loan Claims); and

(ii)      that the undersigned has received a copy of the *Opt Out Notice* and that this Opt-Out Form is submitted pursuant to the terms and conditions set forth therein.

[*Remainder of Page Intentionally Blank*]

_____
Name of Holder

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed


**IF YOU WISH TO OPT OUT, PLEASE COMPLETE, SIGN AND DATE THIS OPT-OUT FORM AND RETURN BEFORE THE OPT OUT DEADLINE VIA FIRST CLASS MAIL OR IN THE REPLY ENVELOPE PROVIDED, OVERNIGHT COURIER, OR HAND DELIVERY TO THE BELOW ADDRESS OR YOU MAY SUBMIT YOUR OPT-OUT ELECTION ONLINE.**

**HARD COPY PAPER SUBMISSION:**

     Send the completed and signed Opt-Out Form via first class mail, hand delivery or overnight courier to:

**SAExploration Holdings, Inc.**
**c/o Epiq Corporate Restructuring, LLC**
**10300 SW Allen Boulevard**
**Beaverton, OR 97005**

**<u>ONLINE SUBMISSION OF THE OPT-OUT FORM:</u>**

You may submit your Opt-Out Form electronically online through the E-Balloting Portal found on the Debtors' case information website: https://dm.epiq11.com/SAExploration. Instructions to access the E-Balloting Portal can be found below.

1. Please visit https://dm.epiq11.com/SAExploration.

2. Click on the "Submit E-Ballot" section of the Debtors' website.

3. Follow the directions to submit your Opt-Out Form. If you choose to submit your Opt-Out Form via the E-Balloting Portal, you should <u>not</u> return a hard copy of your Opt-Out Form.

**THE "E-OPT-OUT" PORTAL IS THE SOLE MANNER IN WHICH OPT-OUT FORMS MAY BE DELIVERED VIA ELECTRONIC TRANSMISSION. OPT-OUT FORMS SUBMITTED VIA FACSIMILE OR EMAIL WILL NOT BE COUNTED.**

**<u>Schedule 5-1</u>**

**Rights Offering Procedures**

**SAEXPLORATION HOLDINGS, INC. (THE "<u>COMPANY</u>")
RIGHTS OFFERING PROCEDURES[1]**

- **<u>Convertible Noteholders</u>: You and your affiliates combined must hold at least $1,000,000 principal amount of Convertible Notes Claims to be able to exercise at least one of your Subscription Rights to purchase New Term Loans (as defined below) and New First Lien Exit Facility Equity (the "<u>Rights Offering Securities</u>").**

- **<u>Prepetition Term Loan Lenders</u>: You and your affiliates combined must hold at least $1,000,000 principal amount of Term Loan Claims to be able to exercise at least one of your Subscription Rights to purchase Rights Offering Securities.**

- **<u>Prepetition Credit Agreement Lenders</u>: You and your affiliates combined must hold at least $300,000 principal amount of Credit Agreement Claims to be able to exercise at least one of your Subscription Rights to purchase Rights Offering Securities.**

- **<u>Backstop Parties</u>: Pursuant to the Backstop Agreement, the Backstop Parties must exercise all of their Subscription Rights and, in addition, will be required, subject to the terms and conditions of the Backstop Agreement, to purchase any Rights Offering Securities with respect to which Subscription Rights have not been exercised.**

- **If you exercise your Subscription Rights, you will have to PAY for such exercise at the Purchase Price, as described further below.**

- **You are <u>*not*</u> required to exercise any of your Subscription Rights (unless you are a Backstop Party), but you may do so if you wish and if you follow the required procedures.**

- **Additional information is provided in this document and in the Subscription Form for Convertible Noteholder Offering, Term Loan Lender Offering, or Credit Agreement Lender Offering (each, a "<u>Subscription Form</u>") enclosed herewith.**

**The Rights Offering Securities comprise $15,000,000 aggregate principal amount of term loans under the First Lien Exit Facility (the "<u>New Term Loans</u>"), accompanied by 8,645,000 shares of New First Lien Exit Facility Equity.**

---

**Each Subscription Right and share of New First Lien Exit Facility Equity is being distributed and issued by the Company without registration under the Securities Act of 1933, as**

---

[1]    Capitalized terms used and not defined herein shall have the meanings assigned to them in the (i) Restructuring Support Agreement, dated as of August 27, 2020 (including all the exhibits thereto, as may be amended, supplemented or otherwise modified from time to time, the "<u>Restructuring Support Agreement</u>"), (ii) Backstop Commitment Agreement, dated as of August 27, 2020 (the "<u>Backstop Agreement</u>") and (iii) Plan (as defined below).

amended (the "<u>Securities Act</u>"), in reliance upon the exemption provided by Section 4(a)(2) thereof and/or Regulation D thereunder or another available exemption from registration under the Securities Act. None of the Subscription Rights or the New First Lien Exit Facility Equity issuable upon exercise of such Subscription Rights distributed pursuant to these Rights Offering Procedures have been or, at the time of original issuance, will be registered under the Securities Act, nor any state law requiring registration for offer and sale of a security.

The Subscription Rights will not be detachable or transferable separately from Convertible Notes Claims, Term Loan Claims, or Credit Agreement Claims, as applicable. Rather, the Subscription Rights will trade together with the underlying Convertible Notes Claims, Term Loan Claims, or Credit Agreement Claims and be evidenced by the underlying Convertible Notes Claims, Term Loan Claims, or Credit Agreement Claims until the Subscription Instruction Deadline (as set forth below), subject to such limitations, if any, that would be applicable to the transferability of the underlying Convertible Notes Claims, Term Loan Claims, or Credit Agreement Claims; and, provided further, that following the exercise of any Subscription Rights, the holder thereof shall be prohibited from transferring or assigning Convertible Notes Claims, Term Loan Claims, or Credit Agreement Claims, as applicable, corresponding to such Subscription Rights until the termination or consummation of the Rights Offering.

No New First Lien Exit Facility Equity may be sold or transferred except pursuant to an exemption from registration under the Securities Act or the securities laws of any state.

Rights Offering Securities are available only to, and any invitation, offer or agreement to purchase will be entered into only with, Eligible Holders. Any person who is not an Eligible Holder should not act or rely on this document or any of its contents.

The Disclosure Statement has separately been distributed in connection with the Debtors' solicitation of votes to accept or reject the Plan and that document sets forth important information, including risk factors, that should be carefully read and considered by each Eligible Holder prior to making a decision to participate in the Rights Offering. Additional copies of the Disclosure Statement are available upon request from Epiq Corporate Restructuring, LLC (the "<u>Subscription Agent</u>") or on the restructuring website, https://dm.epiq11.com/SAExploration.

The Rights Offering is being conducted by the Company in good faith and in compliance with the Bankruptcy Code. In accordance with Section 1125(e) of the Bankruptcy Code, a debtor or any of its agents that participate, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security offered or sold under the plan of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such participation, for violation of any applicable law, rule, or regulation governing the offer, issuance, sale or purchase of securities.

The distribution or communication of these Rights Offering Procedures and the issue of the New First Lien Exit Facility Equity in certain jurisdictions may be restricted by law. No

action has been taken or will be taken to permit the distribution or communication of these Rights Offering Procedures in any jurisdiction where any action for that purpose may be required. Accordingly, these Rights Offering Procedures may not be distributed or communicated, and the New First Lien Exit Facility Equity may not be subscribed, purchased or issued, in any jurisdiction except in circumstances where such distribution, communication, subscription, purchase or issue would comply with all applicable laws and regulations without the need for the Company to take any action or obtain any consent, approval or authorization therefor except for any notice filings required under U.S. federal and applicable state securities laws.

The New First Lien Exit Facility Equity issued upon exercise of a Subscription Right shall be stamped or otherwise imprinted with a legend in substantially the following form:

"THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED EXCEPT IN ACCORDANCE WITH THE FOLLOWING SENTENCE. BY ITS ACQUISITION HEREOF OR OF A BENEFICIAL INTEREST HEREIN, THE ACQUIRER:

(1)     REPRESENTS THAT (A) IT AND ANY ACCOUNT FOR WHICH IT IS ACTING IS A "QUALIFIED INSTITUTIONAL BUYER" (WITHIN THE MEANING OF RULE 144A UNDER THE SECURITIES ACT) AND THAT IT EXERCISES SOLE INVESTMENT DISCRETION WITH RESPECT TO EACH SUCH ACCOUNT OR (B) IT IS AN "ACCREDITED INVESTOR" AS SUCH TERM IS DEFINED IN RULE 501 OF REGULATION D OF THE SECURITIES ACT OR (C) IT IS A NON-U.S. PERSON WITHIN THE MEANING OF REGULATION S UNDER THE SECURITIES ACT LOCATED OUTSIDE THE UNITED STATES, AND

(2)     AGREES FOR THE BENEFIT OF SAEXPLORATION HOLDINGS, INC. (THE "COMPANY") THAT IT WILL NOT OFFER, SELL, PLEDGE OR OTHERWISE TRANSFER THIS SECURITY OR ANY BENEFICIAL INTEREST HEREIN PRIOR TO DATE THAT IS ONE YEAR AFTER ISSUE DATE HEREOF, EXCEPT:

(A)     TO THE COMPANY OR ANY SUBSIDIARY THEREOF, OR

(B)     PURSUANT TO A REGISTRATION STATEMENT WHICH HAS BECOME EFFECTIVE UNDER THE SECURITIES ACT, OR

(C)     TO A QUALIFIED INSTITUTIONAL BUYER IN COMPLIANCE WITH RULE 144A UNDER THE SECURITIES ACT, OR

(D)     PURSUANT TO AN EXEMPTION FROM REGISTRATION PROVIDED BY RULE 144 UNDER THE SECURITIES ACT OR ANY OTHER AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT; OR

**(E)      PURSUANT TO AN OFFER AND SALE THAT OCCUR OUTSIDE THE UNITED STATES TO A NON-U.S. PERSON WITHIN THE MEANING OF REGULATION S UNDER THE SECURITIES ACT.**

**PRIOR TO THE REGISTRATION OF ANY TRANSFER IN ACCORDANCE WITH CLAUSE (2)(D) ABOVE, THE COMPANY AND ITS TRANSFER AGENT RESERVE THE RIGHT TO REQUIRE THE DELIVERY OF SUCH LEGAL OPINIONS, CERTIFICATIONS OR OTHER EVIDENCE AS MAY REASONABLY BE REQUIRED IN ORDER TO DETERMINE THAT THE PROPOSED TRANSFER IS BEING MADE IN COMPLIANCE WITH THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS. NO REPRESENTATION IS MADE AS TO THE AVAILABILITY OF ANY EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT."**

Eligible Holders should note the following times relating to the Rights Offering:

| Date | Calendar Date | Event |
|------|---------------|-------|
| Subscription Commencement Date | September 16, 2020 | Commencement of the Rights Offering and the first date on which Eligible Holders of the Convertible Notes Claims, Term Loan Claims, and Credit Agreement Claims become eligible to exercise Subscription Rights. |
| Subscription Instruction Deadline | October 19, 2020 | The deadline for Eligible Holders to subscribe for Rights Offering Securities. |
| | | The Eligible Holders' Subscription Forms must be received by the Subscription Agent at the address set forth in the Subscription Form by the Subscription Instruction Deadline. |
| Subscription Payment Deadline | October 20, 2020 | All Eligible Holders of Convertible Notes Claims, Term Loan Claims, and Credit Agreement Claims must pay the Purchase Price to the Subscription Agent in accordance with the instructions provided in the applicable Subscription Form. |
| | | Eligible Holders of Convertible Notes Claims, Term Loan Claims, and Credit Agreement Claims who are not Backstop Parties must pay the applicable Purchase Price to the Subscription Agent by the Subscription Payment Deadline. |
| | | Eligible Holders of Convertible Notes Claims, Term Loan Claims, and Credit Agreement Claims who are Backstop Parties must pay the applicable Funding Amount to the Subscription Agent by no later than two Business Days prior to the Effective Date (the "Backstop Funding Deadline"). |

To Eligible Holders:

On August 27, 2020, the Company and certain of its affiliates (collectively, the "Debtors") commenced voluntary cases captioned *In re SAExploration Holdings, Inc., et.al.*, Case No. 20-34306 jointly administered under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"). On September 15, 2020, the Company filed the *Debtors' First Amended Chapter 11 Plan of Reorganization* (as it may be further amended, modified and supplemented from time to time, the "Plan") with the Bankruptcy Court, which is attached as Exhibit A to the *Second Amended Disclosure Statement for the Debtors' Chapter 11 Plan of Reorganization* [Docket No. [●]] (as may be amended from time to time in accordance with its terms, the

"Disclosure Statement"). Pursuant to the Plan, each Eligible Holder is eligible to participate in the Rights Offering. You are an Eligible Holder if you are any of the below:

- Eligible Convertible Noteholder. Each holder of a Convertible Notes Claim during the period beginning on the Subscription Commencement Date and ending on the Subscription Instruction Deadline that is either (i) an "accredited investor" as defined in Rule 501(a) of Regulation D under the Securities Act (an "Accredited Investor"), (ii) a "qualified institutional buyer" as defined in Rule 144A under the Securities Act (a "QIB") or (iii) a non-U.S. Person within the meaning of Regulation S under the Securities Act located outside the United States and makes certain other customary representations and warranties is an "Eligible Convertible Noteholder".

- Eligible Term Loan Lender. Each holder of a Term Loan Claim during the period beginning on the Subscription Commencement Date and ending on the Subscription Instruction Deadline that is, in each case, either (i) an Accredited Investor, (ii) a QIB or (iii) a non-U.S. Person within the meaning of Regulation S under the Securities Act located outside the United States and makes certain other customary representations and warranties is an "Eligible Term Loan Lender".

- Eligible Credit Agreement Lender. Each holder of a Credit Agreement Claim during the period beginning on the Subscription Commencement Date and ending on the Subscription Instruction Deadline that is, in each case, either (i) an Accredited Investor, (ii) a QIB or (iii) a non-U.S. Person within the meaning of Regulation S under the Securities Act located outside the United States and makes certain other customary representations and warranties is an "Eligible Credit Agreement Lender" (collectively with Eligible Convertible Noteholders and Eligible Term Lenders, "Eligible Holders").

Each Eligible Holder is entitled to participate in the Rights Offering in accordance with the terms and conditions of these Rights Offering Procedures.

For the avoidance of doubt, an Eligible Holder is anyone who holds the relevant Convertible Notes Claims, Term Loan Claims, and/ or Credit Agreement Claims during the period beginning on the Subscription Commencement Date and ending on the Subscription Instruction Deadline (the "Rights Exercise Period") and is either (i) an Accredited Investor, (ii) a QIB or (iii) a non-U.S. Person within the meaning of Regulation S under the Securities Act located outside the United States at all times during the Rights Exercise Period. The Noteholder Rights Offering, the Term Lender Rights Offering, and the Credit Agreement Rights Offering are collectively referred to herein as the "Rights Offering".

Only Eligible Holders that complete the eligibility certifications included as part of the Subscription Form may participate in the Rights Offering.

**Rights Offering Securities**: Rights Offering Securities comprise $15,000,000 New Term Loans and 8,645,000 shares of New First Lien Exit Facility Equity, with each $1,000 principal

amount of the New Term Loans accompanied by 576.3333 shares of New First Lien Exit Facility Equity.

**Convertible Notes Claims**: Pursuant to the Plan, each holder of Convertible Notes Claims during the Rights Exercise Period will have the right (but not the obligation, unless such holder is also a Backstop Party) to subscribe for its *pro rata* portion of 9.5% of the Rights Offering Securities (the "Noteholder Rights Offering," and such Rights Offering Securities, the "Noteholder Rights Offering Securities") at the Purchase Price.

**Term Loan Claims**: Pursuant to the Plan, each holder of Term Loan Claims during the Rights Exercise Period will have the right (but not the obligation, unless such holder is also a Backstop Party) to subscribe for its *pro rata* portion of 12.5% of the Rights Offering Securities (the "Term Lender Rights Offering," and such Rights Offering Securities, the "Term Lender Rights Offering Securities") at the Purchase Price.

**Credit Agreement Claims**: Pursuant to the Plan, each holder of Credit Agreement Claims during the Rights Exercise Period will have the right (but not the obligation, unless such holder is also a Backstop Party) to subscribe for its *pro rata* portion of 78% of the Rights Offering Securities (the "Credit Agreement Rights Offering," and such Rights Offering Securities, the "Credit Agreement Rights Offering Securities") at the Purchase Price.

The "Purchase Price" for the Rights Offering Securities shall equal 100% of the principal amount of the New Term Loans being purchased as part of the Rights Offering Securities.

No Eligible Holder (except a Backstop Party) shall be entitled to participate in the Rights Offering unless the aggregate Purchase Price for the Rights Offering Securities it subscribes for is received by the Subscription Agent by the Subscription Payment Deadline.

Eligible Holders who are Backstop Parties must pay the applicable Funding Amount to the Subscription Agent by the Backstop Funding Deadline, subject to the terms and conditions of the Backstop Agreement.

The rights and obligations of the Backstop Parties in the Rights Offering shall be governed by the Backstop Agreement to the extent the rights or obligations set forth therein differ from the rights and obligations set forth in these Rights Offering Procedures or any Subscription Form.

No interest is payable on any advanced funding of the Purchase Price. If the Rights Offering is terminated for any reason, the aggregate Purchase Price previously received by the Subscription Agent will be returned to Eligible Holders as provided in Section 6 hereof.  No interest will be paid on any returned Purchase Price.

**To participate in the Rights Offering, an Eligible Holder must complete all of the steps outlined below.  If an Eligible Holder does not complete all of the steps outlined below by the Subscription Instruction Deadline or the Subscription Payment Deadline or Funding Deadline, as applicable, such Eligible Holder shall be deemed to have forever and irrevocably relinquished and waived its right to participate in the Rights Offering.**

1.      **Rights Offering**

Eligible Holders that have provided the eligibility certifications included in the Subscription Forms have the right, but not the obligation (unless such holder is also a Backstop Party), to participate in the Rights Offering.

During the Rights Exercise Period, (i) Eligible Convertible Noteholders are eligible to subscribe for their *pro rata* portion of the Noteholder Rights Offering Securities, (ii) Eligible Term Loan Lenders are eligible to subscribe for their *pro rata* portion of the Term Lender Rights Offering Securities, and (iii) Eligible Credit Agreement Lenders are eligible to subscribe for their *pro rata* portion of the Credit Agreement Rights Offering Securities.

Subject to the terms and conditions set forth in the Plan and these Rights Offering Procedures, each Eligible Convertible Noteholder during the Rights Exercise Period is entitled to subscribe for $23.75 of Noteholder Rights Offering Securities per $1,000 of principal amount of Convertible Notes Claims held. You and your affiliates combined must hold at least $1,000,000 principal amount of Convertible Notes Claims to be able to exercise at least one Subscription Right.

Subject to the terms and conditions set forth in the Plan and these Rights Offering Procedures, each Eligible Term Loan Lender during the Rights Exercise Period is entitled to subscribe for $64.66 of Term Loan Rights Offering Securities per $1,000 of principal amount of Term Loan Claims held. You and your affiliates combined must hold at least $1,000,000 principal amount of Term Loan Claims to be able to exercise at least one Subscription Right.

Subject to the terms and conditions set forth in the Plan and these Rights Offering Procedures, each Eligible Credit Agreement Lender during the Rights Exercise Period is entitled to subscribe for $570.73 of Credit Agreement Rights Offering Securities per $1,000 of principal amount of Credit Agreement Claims held. You and your affiliates combined must hold at least $300,000 principal amount of Credit Agreement Claims to be able to exercise at least one Subscription Right.

There will be no over-subscription privilege in the Rights Offering.  Any Rights Offering Securities that are unsubscribed by the Eligible Holders entitled thereto will not be offered to other Eligible Holders but will be purchased by the applicable Backstop Parties in accordance with the Backstop Agreement. Subject to the terms and conditions of the Backstop Agreement, each Backstop Party is obligated to (x) exercise all applicable Subscription Rights that are held by it as of the Subscription Instruction Deadline and (y) subject to such Backstop Party's Backstop Commitment, purchase its *pro rata* portion of the unsubscribed Rights Offering Securities, in each case subject to the terms and conditions of the Backstop Agreement.

Eligible Holders will be subject to restrictions under the Securities Act on their ability to resell the shares of New First Lien Exit Facility Equity, as discussed in more detail in Article VI of the Disclosure Statement, entitled "Transfer Restrictions and Consequences under Federal Securities Laws."

**SUBJECT TO THE TERMS AND CONDITIONS OF THE RIGHTS OFFERING PROCEDURES AND THE BACKSTOP AGREEMENT IN THE CASE OF ANY**

**BACKSTOP PARTY, ALL SUBSCRIPTIONS SET FORTH IN THE APPLICABLE SUBSCRIPTION FORM(S) ARE IRREVOCABLE.**

**2.      Rights Exercise Period**

The Rights Offering will commence on the Subscription Commencement Date and will expire at the Subscription Instruction Deadline.  Each Eligible Holder intending to purchase Rights Offering Securities in any Rights Offering must affirmatively elect to exercise its Subscription Rights in the manner set forth in the applicable Subscription Form by the Subscription Instruction Deadline and must pay for any exercised Subscription Rights by the applicable deadline.

Any exercise (including payment) of the Subscription Rights to purchase Noteholder Rights Offering Securities (the "Noteholder Subscription Rights") by an Eligible Convertible Noteholder after the Subscription Instruction Deadline will not be allowed and any purported exercise (including payment) received by the Subscription Agent after the Subscription Instruction Deadline, regardless of when the documents or payment relating to such exercise were sent, will not be honored, except that the Company shall have the discretion, with the consent of the Required Backstop Parties, to allow any exercise of Noteholder Subscription Rights after the Subscription Instruction Deadline.

Any exercise (including payment) of the Subscription Rights to purchase Term Lender Rights Offering Securities (the "Term Lender Subscription Rights") by an Eligible Term Lender after the Subscription Instruction Deadline will not be allowed and any purported exercise (including payment) received by the Subscription Agent after the Subscription Instruction Deadline, regardless of when the documents or payment relating to such exercise were sent, will not be honored, except that the Company shall have the discretion, with the consent of the Required Backstop Parties, to allow any exercise of Term Lender Subscription Rights after the Subscription Instruction Deadline.

Any exercise (including payment) of the Subscription Rights to purchase Credit Agreement Rights Offering Securities (the "Credit Agreement Subscription Rights" and, together with the Noteholder Subscription Rights and the Term Lender Subscription Rights, the "Subscription Rights") by an Eligible Credit Agreement Lender after the Subscription Instruction Deadline will not be allowed and any purported exercise (including payment) received by the Subscription Agent after the Subscription Instruction Deadline, regardless of when the documents or payment relating to such exercise were sent, will not be honored, except that the Company shall have the discretion, with the consent of the Required Backstop Parties, to allow any exercise of Credit Agreement Subscription Rights after the Subscription Instruction Deadline.

The Subscription Instruction Deadline may be extended by the Company with the prior written consent of the Required Backstop Parties, or as required by law.

**3.      Delivery of Subscription Documents**

Each Eligible Holder may exercise all or any portion of such Eligible Holder's Subscription Rights, but subject to the terms and conditions contained herein.  In order to facilitate the exercise of the Subscription Rights, beginning on the Subscription Commencement Date, the applicable Subscription Form and these Rights Offering Procedures will be sent to Eligible Holders at that

time, together with appropriate instructions for the proper completion, due execution and timely delivery of the executed Subscription Form and the payment of the applicable aggregate Purchase Price for its Rights Offering Securities.

4. **Exercise of Subscription Rights; Payment**

In order to validly exercise its Noteholder Subscription Rights, Term Lender Subscription Rights, and/or its Credit Agreement Subscription Rights, all Eligible Holders must:

(a)     return duly completed and executed applicable Subscription Forms to the Subscription Agent (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable); and

(b)     pay the applicable Purchase Price (i) if such Eligible Holder is a Backstop Party, by the Backstop Funding Deadline in accordance with the Backstop Agreement, and (ii) otherwise, to the Subscription Agent by wire transfer ONLY of immediately available funds in accordance with the wire instructions included in the Subscription Form by the Subscription Payment Deadline.

5. **Transfer Restriction; Revocation**

- The Subscription Rights will not be detachable or transferable separately from Convertible Notes Claims, Term Loan Claims, or Credit Agreement Claims, as applicable. If any Subscription Rights are transferred by an Eligible Holder in contravention of the foregoing, the Subscription Rights will be cancelled, and neither such Eligible Holder nor the purported transferee will receive any Rights Offering Securities otherwise purchasable on account of such transferred Subscription Rights;

- The Subscription Rights together with the underlying Convertible Notes Claims, Term Loan Claims, or Credit Agreement Claims, as applicable, will trade together as a unit, subject to such limitations, if any, that would be applicable to the transferability of the underlying Convertible Notes Claims, Term Loan Claims, or Credit Agreement Claims, as applicable; and

- Once an Eligible Holder has properly exercised its Subscription Rights, subject to the terms and conditions contained in these Rights Offering Procedures and the Backstop Agreement in the case of any Backstop Party, such exercise will be irrevocable. Moreover, following the exercise of any Subscription Rights, the holder thereof shall be prohibited from transferring or assigning Convertible Notes Claims, Term Loan Claims, or Credit Agreement Claims, as applicable, corresponding to such Subscription Rights until the termination or consummation of the Rights Offering.

6. **Release of cash to Debtors/Termination/Return of Payment**

(a)     The cash paid to the Subscription Agent in accordance with these Rights Offering Procedures (and with respect to the Backstop Parties, the Backstop Agreement) will be deposited and held by the Subscription Agent in a segregated account until released to the Debtors in

connection with the settlement of the Rights Offering on the Effective Date.  The Subscription Agent may not use such cash for any other purpose and may not encumber or permit such cash to be encumbered with any lien or similar encumbrance.  The cash held by the Subscription Agent hereunder shall not be deemed part of the Debtors' bankruptcy estates.

(b)     Unless the Effective Date has occurred, the Rights Offering will be deemed automatically terminated without any action of any party upon the earlier of (i) termination of the Backstop Agreement in accordance with its terms, (ii) termination of the Restructuring Support Agreement in accordance with its terms and (iii) the revocation or withdrawal of the Plan by the Debtors.  In the event the Rights Offering is terminated, any payments received pursuant to these Rights Offering Procedures will be returned, without interest, to the applicable Eligible Holder as soon as reasonably practicable.

## 7.     Know-Your-Customer and Other Requirements

On or prior to five (5) Business Days prior to the Effective Date, each Eligible Holder that has exercised its Subscription Rights must provide the administrative agent for the First Lien Exit Facility (the "First Lien Exit Agent") with the following:  (i) a completed administrative questionnaire in the form provided by the First Lien Exit Agent, (ii) all know-your-customer ("KYC") information, tax forms, and other documents required by the First Lien Exit Agent, and (iii) a duly executed signature page to the credit agreement for the First Lien Exit Facility (collectively, the "First Lien Exit Lender Documentation").   The form of administrative questionnaire, list of required KYC information and tax forms, and signature page shall be provided by the Subscription Agent promptly after the Subscription Instruction Deadline to Eligible Holders that exercised their Subscription Rights.  Each Eligible Holder's participation in the Rights Offering shall be subject to the First Lien Exit Agent's satisfactory review of such Eligible Holder's First Lien Exit Lender Documentation.

## 8.     Settlement of the Rights Offering and Distribution of the Rights Offering Securities

The settlement of the Rights Offering is conditioned on confirmation of the Plan by the Bankruptcy Court, compliance by the Debtors with these Rights Offering Procedures, and the substantially simultaneous occurrence of the Effective Date.

The New First Lien Exit Facility Equity will be issued directly to the Eligible Holders in book-entry form on the books of the transfer agent.

The New Term Loans will be issued directly to the Eligible Holders on the loan register of the First Lien Exit Agent.

### Special Note for the Backstop Parties:

Following the Subscription Instruction Deadline, each Backstop Party will receive a Backstop Notice from the Subscription Agent that will set out such Backstop Party's Backstop Commitment and the Funding Amount. Subject to the terms and conditions of the Backstop Agreement, each Backstop Party must pay its Funding Amount to the Subscription Agent no later

than the Backstop Funding Deadline by wire transfer ONLY of immediately available funds in accordance with the wire instructions included in the Backstop Notice.

9.    **Fractional Rights Offering Securities**

No fractional Rights Offering Securities will be issued in the Rights Offering.  All Rights Offering Securities will be calculated such that (a) fractions of one-half or greater shall be rounded to the next higher $1,000 and (b) fractions of less than one-half shall be rounded to the next lower $1,000. No compensation shall be paid, whether in cash or otherwise, in respect of any rounded-down amounts.

10.    **Validity of Exercise of Subscription Rights**

All questions concerning the timeliness, viability, form and eligibility of any exercise of Subscription Rights will be determined in good faith by the Debtors in consultation with the Required Backstop Parties, and, if necessary, subject to a final and binding determination by the Bankruptcy Court.  The Debtors, with the consent of the Required Backstop Parties, may waive or reject any defect or irregularity in, or permit such defect or irregularity to be corrected within such time as they may determine in good faith, the purported exercise of any Subscription Rights. Subscriptions will be deemed not to have been received or accepted until all irregularities have been waived or cured within such time as the Debtors determine in good faith in consultation with the Required Backstop Parties.

Before exercising any Subscription Rights, Eligible Holders should read the Disclosure Statement and the Plan for information relating to the Debtors and the risk factors to be considered.

All calculations, including, to the extent applicable, the calculation of Eligible Holders' Rights Offering Securities, shall each be made in good faith by the Company with the consent of the Required Backstop Parties and in each case in accordance with these Rights Offering Procedures and the Plan, and any disputes regarding such calculations shall be subject to a final and binding determination by the Bankruptcy Court.

11.    **Modification of Procedures**

With the prior written consent of the Required Backstop Parties, the Debtors reserve the right to modify these Rights Offering Procedures, or adopt additional procedures consistent with these Rights Offering Procedures, to effectuate the Rights Offering and to issue the Rights Offering Securities, provided, however, that the Debtors shall provide prompt written notice to each Eligible Holder of any material modification to these Rights Offering Procedures made after the Subscription Commencement Date by posting a notice with respect to the modified or additional procedures on the Debtors' case website, provided further that any amendments or modifications to the terms of the Rights Offering are subject to the provisions of Section 8.5 of the Backstop Agreement, *mutatis mutandis*.  In so doing, and subject to the consent of the Required Backstop Parties, the Debtors may execute and enter into agreements and take further action that the Debtors determine in good faith is necessary and appropriate to effectuate and implement the Rights Offering and the issuance of the Rights Offering Securities.

The Debtors reserve the right to request additional information from any participant in the Rights Offering to confirm that such participant is an Eligible Holder.

**12.     Inquiries and Transmittal of Documents; Subscription Agent**

The Rights Offering Instructions for Eligible Holders attached hereto should be carefully read and strictly followed by the Eligible Holders.

Questions relating to the Rights Offering should be directed to the Subscription Agent via email to Tabulation@epiqglobal.com (with a reference to "SAE Rights" in the subject line).  Please note that the Subscription Agent is only able to respond to procedural questions regarding the Rights Offering, and cannot provide any information beyond that included in these Rights Offering Procedures and the Subscription Forms, as applicable.

The risk of non-delivery of any instructions, documents, and payments to the Subscription Agent is on the Eligible Holder electing to exercise its Subscription Rights and not the Debtors, the Subscription Agent, or the Backstop Parties.

**Please note that each Eligible Holder that exercises its Subscription Rights must provide its First Lien Exit Lender Documentation to the First Lien Exit Agent on or before five (5) Business Days prior to the Effective Date.**

## SAEXPLORATION HOLDINGS, INC.

## RIGHTS OFFERING INSTRUCTIONS FOR ELIGIBLE HOLDERS

**To elect to participate in the Rights Offering, you must follow the instructions set out below:**

1.    **Insert** the principal amount of the Convertible Notes Claims, Credit Agreement Claims, or Term Loan Claims, as applicable, that you hold in Item 1 of your applicable Subscription Form(s) (if you do not know such amount, please contact the applicable trustee or administrative agent immediately).

2.    **Complete** the worksheet in Item 2 of your applicable Subscription Form(s), which calculates the maximum number of Rights Offering Securities available for you to purchase. Such amount must be rounded down to the nearest $1,000 of New Term Loans if the fraction is less than one-half and rounded up to the nearest $1,000 if the fraction is one-half or greater. The number of shares of New First Lien Exit Facility Equity will be automatically linked to the amount of New Term Loans you elect to purchase.

3.    **Complete** Item 3 of your applicable Subscription Form(s) to indicate the principal amount of New Term Loans you elect to purchase (which amount may not exceed the maximum number of Rights Offering Securities available for you to purchase), and calculate in Item 3 the aggregate Purchase Price for the Rights Offering Securities that you elect to purchase.

4.    **Complete** the eligibility certifications in Item 4 of your applicable Subscription Form(s).

5.    **Read, complete and sign** the certification in Item 7 of your applicable Subscription Form(s). Such execution shall indicate your acceptance and approval of the terms and conditions set forth in these Rights Offering Procedures.

6.    **Return** your applicable signed Subscription Form(s) to the Subscription Agent by the Subscription Instruction Deadline.

7.    **Pay the applicable Purchase Price.**

- **The Subscription Instruction Deadline is October 19, 2020.**

- **The Subscription Payment Deadline is October 20, 2020.**

**<u>Schedule 5-2</u>**

**Subscription Forms**

SAEXPLORATION HOLDINGS, INC.

SUBSCRIPTION FORM
FOR USE BY ELIGIBLE HOLDERS OF
CREDIT AGREEMENT CLAIMS

IN CONNECTION WITH DEBTORS'
SECOND AMENDED DISCLOSURE STATEMENT
DATED SEPTEMBER 15, 2020

---

<u>SUBSCRIPTION INSTRUCTION DEADLINE</u>

<u>AND</u>

<u>SUBSCRIPTION PAYMENT DEADLINE</u>

**The Subscription Instruction Deadline is October 19, 2020.**

**The Subscription Payment Deadline is October 20, 2020.**

———————————

**The Rights Offering Securities comprise $15,000,000 aggregate principal amount of term loans under the First Lien Exit Facility (the "<u>New Term Loans</u>"), accompanied by 8,645,000 shares of New First Lien Exit Facility Equity. The Credit Agreement Rights Offering Securities comprise $11,700,000 aggregate principal amount of the New Term Loans, accompanied by 6,743,100 shares of New First Lien Exit Facility Equity.**

———————————

**You and your affiliates combined must hold at least $300,000 principal amount of Credit Agreement Claims to be able to exercise at least one of your Subscription Rights.**

**If you wish to exercise your Subscription Rights you must (i) return your Subscription Form so that it is received by the Subscription Agent by the Subscription Instruction Deadline, and (ii) submit your payment by wire transfer of the aggregate Purchase Price so that it is received by the Subscription Payment Deadline, or your subscription will not be counted and will be deemed forever relinquished and waived.**

**If you are a Backstop Party, please see the special note to you in Item 6.**

1

**The shares of the New First Lien Exit Facility Equity are being distributed and issued by the Debtors without registration under the Securities Act of 1933, as amended (the "Securities Act"), in reliance upon the exemption provided by Section 4(a)(2) thereof and/or Regulation D thereunder or another available exemption from registration under the Securities Act.**

**None of the New First Lien Exit Facility Equity has been or, at the time of original issuance, will be registered under the Securities Act, nor any State law requiring registration for offer or sale of a security.**

**No New First Lien Exit Facility Equity may be sold or transferred except pursuant to an exemption from registration under the Securities Act or the securities laws of any state.**

**Rights Offering Securities are available only to, and any invitation, offer or agreement to purchase will be entered into only with Eligible Holders (as defined below).  Any person who is not an Eligible Holder should not act or rely on this document or any of its contents.**

**Please consult the Plan, the Disclosure Statement and the Rights Offering Procedures (including the Rights Offering Instructions attached thereto) for additional information with respect to this Subscription Form. Any terms capitalized but not defined herein shall have the meaning as set forth in the Plan or the Rights Offering Procedures.**

**If you have any questions, please contact the Subscription Agent via email to Tabulation@epiqglobal.com (with a reference to "SAE Rights" in the subject line).**

The New First Lien Exit Facility Equity will be issued directly to the Eligible Holders in book-entry form on the books of the transfer agent.

Prepetition Credit Agreement Lenders who validly subscribe will receive their aggregate principal amount of the New Term Loans on the loan register of the First Lien Exit Agent.

**Item 1. Amount of Credit Agreement Claims**

I certify that I am the Prepetition Credit Agreement Lender of the Credit Agreement Claims in the following amount (insert amount on the line below) or that I am the authorized signatory of that Prepetition Credit Agreement Lender.

*Insert the principal amount of the Credit Agreement Claims*

_____

**Item 2. Rights Calculation.  Calculate the maximum aggregate principal amount of New Term Loans and the number of shares of New First Lien Exit Facility Equity.** The number of Credit Agreement Rights Offering Securities for which you may subscribe, based on the amount shown above, is calculated as follows:

| BOX A | | | | | BOX B |
|---|---|---|---|---|---|
| _____ <br> (Insert principal amount of Credit Agreement Claims from Item 1 above divided by $1,000. Do not round to the nearest cent.) | X | $570.73 | = | $ | $ _____ <br> (Maximum dollar amount of the New Term Loans) (Must be denominated in round thousands; Round DOWN to nearest thousand if the fraction is less than one-half and UP to the nearest thousand if the fraction is one-half or greater) |

Each Eligible Holder is entitled to subscribe for $570.73 dollar amount of New Term Loans and 328.9317 shares of New First Lien Exit Facility Equity per $1,000 of principal amount of the Credit Agreement Claims, subject to the individual limits included in the calculations in the table above. Actual shares issued will be rounded to the nearest whole share (i.e. round DOWN to nearest share if the fraction is less than one-half and UP to the nearest share if the fraction is one-half or greater).

To subscribe, review and complete all items below, including Items 3, 4, 5, 6 and 7.

**Item 3. Exercise Instruction. Principal Amount of New Term Loans and Purchase Price.** By filling in the above and the following blanks, you are indicating that the undersigned Eligible Holder is interested in purchasing the principal amount of Credit Agreement Rights Offering Securities specified in Box C (associated with the amount of Term Loan Claims shown in Box A) at the aggregate Purchase Price shown in Box D, on the terms and subject to the conditions set forth in the Rights Offering Procedures

| BOX C | | BOX D |
|---|---|---|
| | | |

| $\underline{\hspace{3cm}}$ (Insert principal amount of New Term Loans you wish to purchase in the Rights Offering (may not exceed maximum amount shown above in Box B) (Must be denominated in round thousands) | X | 100.00% | = | $\underline{\hspace{3cm}}$ (Dollar amount of the New Term Loans)  (Must be denominated in round thousands) |
|---|---|---|---|---|

**Along with each $1,000 of principal amount of the New Term Loans, Eligible Holders will automatically receive 328.9317 shares of New First Lien Exit Facility Equity subject to the rounding provisions noted above.**

**Item 4.  Eligible Holder Certification.**

(*This section is for <u>all</u> parties who wish to participate in the Rights Offering*).

The undersigned is an Eligible Holder (as defined in the Rights Offering Procedures), meaning that such holder (please check one):

☐      has reviewed the definition of accredited investor annexed hereto in Exhibit A and is an accredited investor within the meaning of Rule 501(a) promulgated under Regulation D of the Securities Act;

☐      has reviewed the definition of qualified institutional buyer annexed hereto in Exhibit A and is a qualified institutional buyer as defined in Rule 144A under the Securities Act; or

☐      has reviewed the definition of U.S. Person annexed hereto in Exhibit A and is a non-U.S. Person within the meaning of Regulation S under the Securities Act located outside the United States.

**Item 5. Administrative and Registration Details.**

Administrative details for the New Term Loans and registration details for the New First Lien Exit Facility Equity will be required from all participating Eligible Holders. Further information will be provided to Eligible Holders who participate in the Rights Offering so that required details may be submitted, and will be sent to the Eligible Holder at the email address listed below.  *Please print very clearly*:

Insert email
address for
Eligible Holder: _____

**Item 6. Payment and Delivery Instructions.**

For all Eligible Holders (except Backstop Parties), payment of the aggregate Purchase Price shown in Box D above shall be made by **Subscription Payment Deadline** by wire transfer ONLY of immediately available funds in accordance with the wire instructions shown below.

For Backstop Parties payment of the aggregate Purchase Price shown in Box C above shall be made by **Backstop Funding Deadline** by wire transfer ONLY of immediately available funds in accordance with the wire instructions shown below.

<u>**Delivery of Subscription Form**</u>

You must deliver the completed Subscription form to the Subscription Agent so that it is *received* by the Subscription Agent by the Subscription Instruction Deadline:

**Via email to:  Tabulation@epiqglobal.com**
**(with a reference to "SAE Rights" in the subject line)**

If you have any questions, please contact the Subscription Agent via email to Tabulation@epiqglobal.com (with a reference to "SAE Rights" in the subject line).

<u>**Wire instructions for the payment of the amount shown in Box D:**</u>

You must wire the necessary funds so they are *received* in the following account by the Subscription Payment Deadline:

| | |
|---|---|
| Account Name: | Epiq Corporate Restructuring LLC as Subscription Agent for SAExploration Holdings |
| Bank Account No.: | |
| ABA/Routing No.: | |
| Bank Name: | |
| Bank Address: | |
| Reference: | <u>SAExploration Holdings</u> Rights Offer |

**Insert YOUR wire information in the event a refund is needed:**

| | |
|---|---|
| Account Name: | |

| | |
|---|---|
| Bank Account No.: | |
| ABA/Routing No.: | |
| Bank Name: | |
| Bank Address: | |
| Reference: | |

---

**FOR ALL PARTIES OTHER THAN BACKSTOP PARTIES, PAYMENT MUST BE MADE BY THE SUBSCRIPTION PAYMENT DEADLINE.**

**ELIGIBLE HOLDERS THAT ARE BACKSTOP PARTIES MUST DELIVER THE APPROPRIATE FUNDING NO LATER THAN THE BACKSTOP FUNDING DEADLINE.**

---

**Item 7. Certification.**

The undersigned hereby certifies that (i) the undersigned is the Prepetition Credit Agreement Lender of the Credit Agreement Claims set forth in Item 1 above (the "Holder"), or the authorized signatory (the "Authorized Signatory") of such holder acting on behalf of the Holder, (ii) the Holder has reviewed a copy of the Plan, the Disclosure Statement and the Rights Offering Procedures (including the Rights Offering Instructions attached thereto) and (iii) the Holder is an Eligible Holder (as described in Item 4) and understands that the exercise of the rights under the Credit Agreement Rights Offering is subject to all the terms and conditions set forth in the Plan, the Rights Offering Procedures and, if applicable, the Backstop Agreement.

By completing and returning this Subscription Form, the Eligible Holder (or the Authorized Signatory on behalf of the Holder) is committing to (i) continue to hold the Credit Agreement Claims shown in Box A until the termination or consummation of the Rights Offering, (ii) subscribe for the number of Credit Agreement Rights Offering Securities shown in Box C above, (iii) pay the aggregate Purchase Price listed in Box D above by the Subscription Payment Deadline (solely with respect to Eligible Holders that are not Backstop Parties), (iv) vote to accept the Plan (which vote shall not be withdrawn, changed, amended or revoked) and (v) provide its First Lien Exit Lender Documentation to the First Lien Exit Agent on or before five (5) Business Days prior to the Effective Date.

**The Holder (or the Authorized Signatory on behalf of such Holder) acknowledges that, by executing this Subscription Form, the Eligible Holder named below has elected to subscribe for the number of Credit Agreement Rights Offering Securities designated in Box C above and will be bound to pay the aggregate Purchase Price listed in Box D above for the Credit Agreement Rights Offering Securities it has subscribed for and that it may be liable to the Debtors to the extent of any nonpayment.**

6

Date:_____

Name of Eligible Holder:_____


Signature:_____

Name of Signatory:_____

Title:_____

Telephone Number: _____

Email:_____


**YOU MUST RETURN THIS FORM DIRECTLY TO THE SUBSCRIPTION AGENT SO THAT IT IS RECEIVED BY THE SUBSCRIPTION INSTRUCTION DEADLINE. IF YOU ARE NOT A BACKSTOP PARTY, YOU MUST WIRE YOUR PAYMENT SO IT IS RECEIVED BY THE SUBSCRIPTION PAYMENT DEADLINE.**

**EXHIBIT A**

 "**Accredited Investor**" as defined in Rule 501 of Regulation D of the Securities Act shall mean any person who comes within any of the following categories, at the time of the sale of the securities to the person:

(1)     Any bank as defined in Section 3(a)(2) of the Securities Act of 1933 (the "Act"), or any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended; any insurance company as defined in Section 2(a)(13) of the Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in Section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are Accredited Investors;

(2)     Any private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940;

(3)     Any organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

(4)     Any director, executive officer, or general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of that issuer;

(5)     Any natural person whose individual net worth, or joint net worth with that person's spouse, exceeds $1,000,000;

    (i) Except as provided in clause (ii) paragraph (5), for purposes of calculating net worth under this paragraph (5):

        (A) The person's primary residence shall not be included as an asset;

(B) Indebtedness that is secured by the person's primary residence, up to the estimated fair market value of the primary residence at the time of the sale of securities, shall not be included as a liability (except that if the amount of such indebtedness outstanding at the time of sale of securities exceeds the amount outstanding 60 days before such time, other than as a result of the acquisition of the primary residence, the amount of such excess shall be included as a liability); and

(C) Indebtedness that is secured by the person's primary residence in excess of the estimated fair market value of the primary residence at the time of the sale of securities shall be included as a liability;

(ii) Clause (i) of this paragraph (5) will not apply to any calculation of a person's net worth made in connection with a purchase of securities in accordance with a right to purchase such securities, provided that:

(A) Such right was held by the person on July 20, 2010;

(B) The person qualified as an Accredited Investor on the basis of net worth at the time the person acquired such right; and

(C) The person held securities of the same issuer, other than such right, on July 20, 2010.

(6)     Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

(7)     Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii) under the Act; and

(8)     Any entity in which all of the equity owners are Accredited Investors.

"**Qualified institutional buyer**" as defined in Rule 144A under the Securities Act shall mean:

(i)     Any of the following entities, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with the entity:

(A) Any insurance company as defined in section 2(a)(13) of the Act;

9

(B) Any investment company registered under the Investment Company Act or any business development company as defined in section 2(a)(48) of that Act;

(C) Any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958;

(D) Any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees;

(E) Any employee benefit plan within the meaning of title I of the Employee Retirement Income Security Act of 1974;

(F) Any trust fund whose trustee is a bank or trust company and whose participants are exclusively plans of the types identified in paragraph (a)(1)(i) (D) or (E) of this section, except trust funds that include as participants individual retirement accounts or H.R. 10 plans.

(G) Any business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940;

(H) Any organization described in section 501(c)(3) of the Internal Revenue Code, corporation (other than a bank as defined in section 3(a)(2) of the Act or a savings and loan association or other institution referenced in section 3(a)(5)(A) of the Act or a foreign bank or savings and loan association or equivalent institution), partnership, or Massachusetts or similar business trust; and

(I) Any investment adviser registered under the Investment Advisers Act.

(ii)    Any dealer registered pursuant to section 15 of the Exchange Act, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $10 million of securities of issuers that are not affiliated with the dealer, Provided, That securities constituting the whole or a part of an unsold allotment to or subscription by a dealer as a participant in a public offering shall not be deemed to be owned by such dealer;

(iii)   Any dealer registered pursuant to section 15 of the Exchange Act acting in a riskless principal transaction on behalf of a qualified institutional buyer;

(iv)   Any investment company registered under the Investment Company Act, acting for its own account or for the accounts of other qualified institutional buyers, that is part of a family of investment companies which own in the aggregate at least $100 million in securities of issuers, other than issuers that are affiliated with the investment company or are part of such family of investment companies. Family of investment companies means any two or more investment companies registered under the Investment Company Act, except for a unit investment trust whose assets consist solely of shares of one or more registered investment companies, that have the same investment adviser (or, in the case of unit investment trusts, the same depositor), Provided That, for purposes of this section:

(A) Each series of a series company (as defined in Rule 18f-2 under the Investment Company Act [17 CFR 270.18f-2]) shall be deemed to be a separate investment company; and

(B) Investment companies shall be deemed to have the same adviser (or depositor) if their advisers (or depositors) are majority-owned subsidiaries of the same parent, or if one investment company's adviser (or depositor) is a majority-owned subsidiary of the other investment company's adviser (or depositor);

(v)   Any entity, all of the equity owners of which are qualified institutional buyers, acting for its own account or the accounts of other qualified institutional buyers; and

(vi)   Any bank as defined in section 3(a)(2) of the Act, any savings and loan association or other institution as referenced in section 3(a)(5)(A) of the Act, or any foreign bank or savings and loan association or equivalent institution, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with it and that has an audited net worth of at least $25 million as demonstrated in its latest annual financial statements, as of a date not more than 16 months preceding the date of sale under the Rule in the case of a U.S. bank or savings and loan association, and not more than 18 months preceding such date of sale for a foreign bank or savings and loan association or equivalent institution.

"**U.S. Person**" as defined in Rule 902 of Regulation S under the Securities Act shall mean:

(i)   Any natural person resident in the United States;

(ii)   Any partnership or corporation organized or incorporated under the laws of the United States;

(iii)   Any estate of which any executor or administrator is a U.S. person;

(iv)    Any trust of which any trustee is a U.S. person;

(v)    Any agency or branch of a foreign entity located in the United States;

(vi)    Any non-discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary for the benefit or account of a U.S. person;

(vii)    Any discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated, or (if an individual) resident in the United States; and

(viii)    Any partnership or corporation if:

(A) Organized or incorporated under the laws of any foreign jurisdiction; and

(B) Formed by a U.S. person principally for the purpose of investing in securities not registered under the Securities Act, unless it is organized or incorporated, and owned, by Accredited Investors who are not natural persons, estates or trusts.

For purposes of Rule 902 of Regulation S under the Securities Act, the following are not "U.S. persons":

(i)    Any discretionary account or similar account (other than an estate or trust) held for the benefit or account of a non-U.S. person by a dealer or other professional fiduciary organized, incorporated, or (if an individual) resident in the United States;

(ii)    Any estate of which any professional fiduciary acting as executor or administrator is a U.S. person if:

(A) An executor or administrator of the estate who is not a U.S. person has sole or shared investment discretion with respect to the assets of the estate; and

(B) The estate is governed by foreign law;

(iii)    Any trust of which any professional fiduciary acting as trustee is a U.S. person, if a trustee who is not a U.S. person has sole or shared investment discretion with respect to the trust assets, and no beneficiary of the trust (and no settlor if the trust is revocable) is a U.S. person;

(iv)    An employee benefit plan established and administered in accordance with the law of a country other than the United States and customary practices and documentation of such country;

(v)      Any agency or branch of a U.S. person located outside the United States if:

(A) The agency or branch operates for valid business reasons; and

(B) The agency or branch is engaged in the business of insurance or banking and is subject to substantive insurance or banking regulation, respectively, in the jurisdiction where located; and

(vi) The International Monetary Fund, the International Bank for Reconstruction and Development, the Inter-American Development Bank, the Asian Development Bank, the African Development Bank, the United Nations, and their agencies, affiliates and pension plans, and any other similar international organizations, their agencies, affiliates and pension plans.

**SAEXPLORATION HOLDINGS, INC.**

**SUBSCRIPTION FORM**
**FOR USE BY ELIGIBLE HOLDERS OF**
**CLAIMS UNDER THE PREPETITION TERM LOAN**

**IN CONNECTION WITH DEBTORS'**
**SECOND AMENDED DISCLOSURE STATEMENT**
**DATED SEPTEMBER 15, 2020**

---

<u>**SUBSCRIPTION INSTRUCTION DEADLINE**</u>

<u>**AND**</u>

<u>**SUBSCRIPTION PAYMENT DEADLINE**</u>

**The Subscription Instruction Deadline is October 19, 2020.**

**The Subscription Payment Deadline is October 20, 2020.**

———————————

**The Rights Offering Securities comprise $15,000,000 aggregate principal amount of term loans under the First Lien Exit Facility (the "<u>New Term Loans</u>"), accompanied by 8,645,000 shares of New First Lien Exit Facility Equity. The Term Lender Rights Offering Securities comprise $1,875,000 aggregate principal amount of the New Term Loans, accompanied by 1,080,625 shares of New First Lien Exit Facility Equity.**

———————————

**You and your affiliates combined must hold at least $1,000,000 principal amount of Term Loan Claims to be able to exercise at least one of your Subscription Rights.**

**If you wish to exercise your Subscription Rights you must (i) return your Subscription Form so that it is received by the Subscription Agent by the Subscription Instruction Deadline, and (ii) submit your payment by wire transfer of the aggregate Purchase Price so that it is received by the Subscription Payment Deadline, or your subscription will not be counted and will be deemed forever relinquished and waived.**

**If you are a Backstop Party, please see the special note to you in Item 6.**

**The shares of the New First Lien Exit Facility Equity are being distributed and issued by the Debtors without registration under the Securities Act of 1933, as**

---

**amended (the "<u>Securities Act</u>"), in reliance upon the exemption provided by Section 4(a)(2) thereof and/or Regulation D thereunder or another available exemption from registration under the Securities Act.**

**None of the New First Lien Exit Facility Equity has been or, at the time of original issuance, will be registered under the Securities Act, nor any State law requiring registration for offer or sale of a security.**

**No New First Lien Exit Facility Equity may be sold or transferred except pursuant to an exemption from registration under the Securities Act or the securities laws of any state.**

**Rights Offering Securities are available only to, and any invitation, offer or agreement to purchase will be entered into only with Eligible Holders (as defined below).  Any person who is not an Eligible Holder should not act or rely on this document or any of its contents.**

**Please consult the Plan, the Disclosure Statement and the Rights Offering Procedures (including the Rights Offering Instructions attached thereto) for additional information with respect to this Subscription Form. Any terms capitalized but not defined herein shall have the meaning as set forth in the Plan or the Rights Offering Procedures.**

**If you have any questions, please contact the Subscription Agent via email to Tabulation@epiqglobal.com (with a reference to "<u>SAE Rights</u>" in the subject line).**

The New First Lien Exit Facility Equity will be issued directly to the Eligible Holders in book-entry form on the books of the transfer agent.

Prepetition Term Loan Lenders who validly subscribe will receive their aggregate principal amount of the New Term Loans on the loan register of the First Lien Exit Agent.

**Item 1. Amount of Term Loan Claims**

I certify that I am the Prepetition Term Loan Lender of the Term Loan Claims in the following amount (insert amount on the line below) or that I am the authorized signatory of that Prepetition Term Loan Lender.

*Insert the principal amount of the Term Loan Claims*

_____

**Item 2. Rights Calculation. Calculate the maximum aggregate principal amount of New Term Loans and the number of shares of New First Lien Exit Facility Equity.** The number of Term Loan Rights Offering Securities for which you may subscribe, based on the amount shown above, is calculated as follows:

| BOX A | | | | BOX B |
|---|---|---|---|---|
| _____<br>(Insert principal amount of Term Loan Claims from Item 1 above divided by $1,000. Do not round to the nearest cent.) | X | $64.66 | = | $_____<br>(Maximum dollar amount of the New Term Loans) (Must be denominated in round thousands; Round DOWN to nearest thousand if the fraction is less than one-half and UP to the nearest thousand if the fraction is one-half or greater) |

Each Eligible Holder is entitled to subscribe for $64.66 dollar amount of New Term Loans and 37.2629 shares of New First Lien Exit Facility Equity per $1,000 of principal amount of the Term Loan Claims, subject to the individual limits included in the calculations in the table above. Actual shares issued will be rounded to the nearest whole share (i.e. round DOWN to nearest share if the fraction is less than one-half and UP to the nearest share if the fraction is one-half or greater).

To subscribe, review and complete all items below, including Items 3, 4, 5, 6 and 7.

**Item 3. Exercise Instruction. Principal Amount of New Term Loans and Purchase Price.** By filling in the above and the following blanks, you are indicating that the undersigned Eligible Holder is interested in purchasing the principal amount of Term Loan Rights Offering Securities specified in Box C (associated with the amount of Term Loan Claims shown in Box A) at the aggregate Purchase Price shown in Box D, on the terms and subject to the conditions set forth in the Rights Offering Procedures.

| BOX C | | | | BOX D |
|---|---|---|---|---|
| $_____<br>(Insert principal amount of New Term Loans you wish to purchase in the Rights Offering (may not exceed maximum amount shown above in Box B) | X | 100.00% | = | $_____<br>(Dollar amount of the New Term Loans) (Must be denominated in round thousands) |

| (Must be denominated in round thousands) | | | | |
|---|---|---|---|---|
| | | | | |

Along with each $1,000 of principal amount of the New Term Loans, Eligible Holders will automatically receive 37.2629 shares of New First Lien Exit Facility Equity subject to the rounding provisions noted above.

**Item 4.  Eligible Holder Certification.**

(*This section is for <u>all</u> parties who wish to participate in the Rights Offering*).

The undersigned is an Eligible Holder (as defined in the Rights Offering Procedures), meaning that such holder (please check one):

☐       has reviewed the definition of accredited investor annexed hereto in Exhibit A and is an accredited investor within the meaning of Rule 501(a) promulgated under Regulation D of the Securities Act;

☐       has reviewed the definition of qualified institutional buyer annexed hereto in Exhibit A and is a qualified institutional buyer as defined in Rule 144A under the Securities Act; or

☐       has reviewed the definition of U.S. Person annexed hereto in Exhibit A and is a non-U.S. Person within the meaning of Regulation S under the Securities Act located outside the United States.

**Item 5. Administrative and Registration Details.**

Administrative details for the New Term Loans and registration details for the New First Lien Exit Facility Equity will be required from all participating Eligible Holders. Further information will be provided to Eligible Holders who participate in the Rights Offering so that required details may be submitted, and will be sent to the Eligible Holder at the email address listed below.  *Please print very clearly*:

Insert email
address for
Eligible Holder:    _____

**Item 6. Payment and Delivery Instructions.**

For all Eligible Holders (except Backstop Parties), payment of the aggregate Purchase Price shown in Box D above shall be made by **Subscription Payment Deadline** by wire transfer ONLY of immediately available funds in accordance with the wire instructions shown below.

For Backstop Parties payment of the aggregate Purchase Price shown in Box C above shall be made by **Backstop Funding Deadline** by wire transfer ONLY of immediately available funds in accordance with the wire instructions shown below.

### Delivery of Subscription Form

You must deliver the completed Subscription form to the Subscription Agent so that it is *received* by the Subscription Agent by the Subscription Instruction Deadline:

**Via email to:  Tabulation@epiqglobal.com**
**(with a reference to "SAE Rights" in the subject line)**

If you have any questions, please contact the Subscription Agent via email to Tabulation@epiqglobal.com (with a reference to "SAE Rights" in the subject line).

### Wire instructions for the payment of the amount shown in Box D:

You must wire the necessary funds so they are *received* in the following account by the Subscription Payment Deadline:

| | |
|---|---|
| Account Name: | Epiq Corporate Restructuring LLC as Subscription Agent for SAExploration Holdings |
| Bank Account No.: | |
| ABA/Routing No.: | |
| Bank Name: | |
| Bank Address: | |
| Reference: | SAExploration Holdings Rights Offer |

**Insert YOUR wire information in the event a refund is needed:**

| | |
|---|---|
| Account Name: | |
| Bank Account No.: | |
| ABA/Routing No.: | |
| Bank Name: | |
| Bank Address: | |
| Reference: | |

> **FOR ALL PARTIES OTHER THAN BACKSTOP PARTIES, PAYMENT MUST BE MADE BY THE SUBSCRIPTION PAYMENT DEADLINE.**
>
> **ELIGIBLE HOLDERS THAT ARE BACKSTOP PARTIES MUST DELIVER THE APPROPRIATE FUNDING NO LATER THAN THE BACKSTOP FUNDING DEADLINE.**

**Item 7. Certification.**

The undersigned hereby certifies that (i) the undersigned is the Prepetition Term Loan Lender of the Term Loan Claims set forth in Item 1 above (the "Holder"), or the authorized signatory (the "Authorized Signatory") of such holder acting on behalf of the Holder, (ii) the Holder has reviewed a copy of the Plan, the Disclosure Statement and the Rights Offering Procedures (including the Rights Offering Instructions attached thereto) and (iii) the Holder is an Eligible Holder (as described in Item 4) and understands that the exercise of the rights under the Term Loan Rights Offering is subject to all the terms and conditions set forth in the Plan, the Rights Offering Procedures and, if applicable, the Backstop Agreement.

By completing and returning this Subscription Form, the Eligible Holder (or the Authorized Signatory on behalf of the Holder) is committing to (i) continue to hold the Term Loan Claims shown in Box A until the termination or consummation of the Rights Offering, (ii) subscribe for the number of Term Loan Rights Offering Securities shown in Box C above, (iii) pay the aggregate Purchase Price listed in Box D above by the Subscription Payment Deadline (solely with respect to Eligible Holders that are not Backstop Parties), (iv) vote to accept the Plan (which vote shall not be withdrawn, changed, amended or revoked) and (v) provide its First Lien Exit Lender Documentation to the First Lien Exit Agent on or before five (5) Business Days prior to the Effective Date.

**The Holder (or the Authorized Signatory on behalf of such Holder) acknowledges that, by executing this Subscription Form, the Eligible Holder named below has elected to subscribe for the number of Term Loan Rights Offering Securities designated in Box C above and will be bound to pay the aggregate Purchase Price listed in Box D above for the Term Loan Rights Offering Securities it has subscribed for and that it may be liable to the Debtors to the extent of any nonpayment.**

Date:_____

Name of Eligible Holder:_____


Signature:_____

Name of Signatory:_____

Title:_____

Telephone Number: _____

Email:_____


**YOU MUST RETURN THIS FORM DIRECTLY TO THE SUBSCRIPTION AGENT SO THAT IT IS RECEIVED BY THE SUBSCRIPTION INSTRUCTION DEADLINE. IF YOU ARE NOT A BACKSTOP PARTY, YOU MUST WIRE YOUR PAYMENT SO IT IS RECEIVED BY THE SUBSCRIPTION PAYMENT DEADLINE.**

EXHIBIT A

 "**Accredited Investor**" as defined in Rule 501 of Regulation D of the Securities Act shall mean any person who comes within any of the following categories, at the time of the sale of the securities to the person:

(1)     Any bank as defined in Section 3(a)(2) of the Securities Act of 1933 (the "Act"), or any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended; any insurance company as defined in Section 2(a)(13) of the Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in Section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are Accredited Investors;

(2)     Any private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940;

(3)     Any organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

(4)     Any director, executive officer, or general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of that issuer;

(5)     Any natural person whose individual net worth, or joint net worth with that person's spouse, exceeds $1,000,000;

(i) Except as provided in clause (ii) paragraph (5), for purposes of calculating net worth under this paragraph (5):

(A) The person's primary residence shall not be included as an asset;

8

(B) Indebtedness that is secured by the person's primary residence, up to the estimated fair market value of the primary residence at the time of the sale of securities, shall not be included as a liability (except that if the amount of such indebtedness outstanding at the time of sale of securities exceeds the amount outstanding 60 days before such time, other than as a result of the acquisition of the primary residence, the amount of such excess shall be included as a liability); and

(C) Indebtedness that is secured by the person's primary residence in excess of the estimated fair market value of the primary residence at the time of the sale of securities shall be included as a liability;

(ii) Clause (i) of this paragraph (5) will not apply to any calculation of a person's net worth made in connection with a purchase of securities in accordance with a right to purchase such securities, provided that:

(A) Such right was held by the person on July 20, 2010;

(B) The person qualified as an Accredited Investor on the basis of net worth at the time the person acquired such right; and

(C) The person held securities of the same issuer, other than such right, on July 20, 2010.

(6)     Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

(7)     Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii) under the Act; and

(8)     Any entity in which all of the equity owners are Accredited Investors.


"**Qualified institutional buyer**" as defined in Rule 144A under the Securities Act shall mean:

(i)     Any of the following entities, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with the entity:

(A) Any insurance company as defined in section 2(a)(13) of the Act;

9

(B) Any investment company registered under the Investment Company Act or any business development company as defined in section 2(a)(48) of that Act;

(C) Any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958;

(D) Any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees;

(E) Any employee benefit plan within the meaning of title I of the Employee Retirement Income Security Act of 1974;

(F) Any trust fund whose trustee is a bank or trust company and whose participants are exclusively plans of the types identified in paragraph (a)(1)(i) (D) or (E) of this section, except trust funds that include as participants individual retirement accounts or H.R. 10 plans.

(G) Any business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940;

(H) Any organization described in section 501(c)(3) of the Internal Revenue Code, corporation (other than a bank as defined in section 3(a)(2) of the Act or a savings and loan association or other institution referenced in section 3(a)(5)(A) of the Act or a foreign bank or savings and loan association or equivalent institution), partnership, or Massachusetts or similar business trust; and

(I) Any investment adviser registered under the Investment Advisers Act.

(ii)   Any dealer registered pursuant to section 15 of the Exchange Act, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $10 million of securities of issuers that are not affiliated with the dealer, Provided, That securities constituting the whole or a part of an unsold allotment to or subscription by a dealer as a participant in a public offering shall not be deemed to be owned by such dealer;

(iii)   Any dealer registered pursuant to section 15 of the Exchange Act acting in a riskless principal transaction on behalf of a qualified institutional buyer;

(iv)   Any investment company registered under the Investment Company Act, acting for its own account or for the accounts of other qualified institutional buyers, that is part of a family of investment companies which own in the aggregate at least $100 million in securities of issuers, other than issuers that are affiliated with the investment company or are part of such family of investment companies. Family of investment companies means any two or more investment companies registered under the Investment Company Act, except for a unit investment trust whose assets consist solely of shares of one or more registered investment companies, that have the same investment adviser (or, in the case of unit investment trusts, the same depositor), Provided That, for purposes of this section:

> (A) Each series of a series company (as defined in Rule 18f-2 under the Investment Company Act [17 CFR 270.18f-2]) shall be deemed to be a separate investment company; and

> (B) Investment companies shall be deemed to have the same adviser (or depositor) if their advisers (or depositors) are majority-owned subsidiaries of the same parent, or if one investment company's adviser (or depositor) is a majority-owned subsidiary of the other investment company's adviser (or depositor);

(v)   Any entity, all of the equity owners of which are qualified institutional buyers, acting for its own account or the accounts of other qualified institutional buyers; and

(vi)   Any bank as defined in section 3(a)(2) of the Act, any savings and loan association or other institution as referenced in section 3(a)(5)(A) of the Act, or any foreign bank or savings and loan association or equivalent institution, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with it and that has an audited net worth of at least $25 million as demonstrated in its latest annual financial statements, as of a date not more than 16 months preceding the date of sale under the Rule in the case of a U.S. bank or savings and loan association, and not more than 18 months preceding such date of sale for a foreign bank or savings and loan association or equivalent institution.

"**U.S. Person**" as defined in Rule 902 of Regulation S under the Securities Act shall mean:

(i)   Any natural person resident in the United States;

(ii)   Any partnership or corporation organized or incorporated under the laws of the United States;

(iii)   Any estate of which any executor or administrator is a U.S. person;

(iv)     Any trust of which any trustee is a U.S. person;

(v)      Any agency or branch of a foreign entity located in the United States;

(vi)     Any non-discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary for the benefit or account of a U.S. person;

(vii)    Any discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated, or (if an individual) resident in the United States; and

(viii)   Any partnership or corporation if:

      (A) Organized or incorporated under the laws of any foreign jurisdiction; and

      (B) Formed by a U.S. person principally for the purpose of investing in securities not registered under the Securities Act, unless it is organized or incorporated, and owned, by Accredited Investors who are not natural persons, estates or trusts.

For purposes of Rule 902 of Regulation S under the Securities Act, the following are not "U.S. persons":

(i)      Any discretionary account or similar account (other than an estate or trust) held for the benefit or account of a non-U.S. person by a dealer or other professional fiduciary organized, incorporated, or (if an individual) resident in the United States;

(ii)     Any estate of which any professional fiduciary acting as executor or administrator is a U.S. person if:

      (A) An executor or administrator of the estate who is not a U.S. person has sole or shared investment discretion with respect to the assets of the estate; and

      (B) The estate is governed by foreign law;

(iii)    Any trust of which any professional fiduciary acting as trustee is a U.S. person, if a trustee who is not a U.S. person has sole or shared investment discretion with respect to the trust assets, and no beneficiary of the trust (and no settlor if the trust is revocable) is a U.S. person;

(iv)     An employee benefit plan established and administered in accordance with the law of a country other than the United States and customary practices and documentation of such country;

(v)      Any agency or branch of a U.S. person located outside the United States if:

        (A) The agency or branch operates for valid business reasons; and

        (B) The agency or branch is engaged in the business of insurance or banking and is subject to substantive insurance or banking regulation, respectively, in the jurisdiction where located; and

(vi) The International Monetary Fund, the International Bank for Reconstruction and Development, the Inter-American Development Bank, the Asian Development Bank, the African Development Bank, the United Nations, and their agencies, affiliates and pension plans, and any other similar international organizations, their agencies, affiliates and pension plans.

**SAEXPLORATION HOLDINGS, INC.**

**SUBSCRIPTION FORM**
**FOR USE BY ELIGIBLE HOLDERS OF**
**CONVERTIBLE NOTES CLAIMS**

**IN CONNECTION WITH DEBTORS'**
**SECOND AMENDED DISCLOSURE STATEMENT**
**DATED SEPTEMBER 15, 2020**

---

<u>**SUBSCRIPTION INSTRUCTION DEADLINE**</u>

<u>**AND**</u>

<u>**SUBSCRIPTION PAYMENT DEADLINE**</u>

**The Subscription Instruction Deadline is October 19, 2020.**

**The Subscription Payment Deadline is October 20, 2020.**

_____

**The Rights Offering Securities comprise $15,000,000 aggregate principal amount of term loans under the First Lien Exit Facility (the "<u>New Term Loans</u>"), accompanied by 8,645,000 shares of New First Lien Exit Facility Equity. The Noteholder Rights Offering Securities comprise $1,425,000 aggregate principal amount of the New Term Loans, accompanied by 821,275 shares of New First Lien Exit Facility Equity.**

_____

**You and your affiliates combined must hold at least $1,000,000 principal amount of Convertible Notes Claims to be able to exercise at least one of your Subscription Rights.**

**If you wish to exercise your Subscription Rights you must (i) return your Subscription Form so that it is received by the Subscription Agent by the Subscription Instruction Deadline, and (ii) submit your payment by wire transfer of the aggregate Purchase Price so that it is received by the Subscription Payment Deadline, or your subscription will not be counted and will be deemed forever relinquished and waived.**

**If you are a Backstop Party, please see the special note to you in Item 6.**

1

> **The shares of the New First Lien Exit Facility Equity are being distributed and issued by the Debtors without registration under the Securities Act of 1933, as amended (the "<u>Securities Act</u>"), in reliance upon the exemption provided by Section 4(a)(2) thereof and/or Regulation D thereunder or another available exemption from registration under the Securities Act.**
>
> **None of the New First Lien Exit Facility Equity has been or, at the time of original issuance, will be registered under the Securities Act, nor any State law requiring registration for offer or sale of a security.**
>
> **No New First Lien Exit Facility Equity may be sold or transferred except pursuant to an exemption from registration under the Securities Act or the securities laws of any state.**
>
> **Rights Offering Securities are available only to, and any invitation, offer or agreement to purchase will be entered into only with Eligible Holders (as defined below). Any person who is not an Eligible Holder should not act or rely on this document or any of its contents.**
>
> **Please consult the Plan, the Disclosure Statement and the Rights Offering Procedures (including the Rights Offering Instructions attached thereto) for additional information with respect to this Subscription Form. Any terms capitalized but not defined herein shall have the meaning as set forth in the Plan or the Rights Offering Procedures.**
>
> **If you have any questions, please contact the Subscription Agent via email to Tabulation@epiqglobal.com (with a reference to "<u>SAE Rights</u>" in the subject line).**

The New First Lien Exit Facility Equity will be issued directly to the Eligible Holders in book-entry form on the books of the transfer agent.

Convertible Noteholders who validly subscribe will receive their aggregate principal amount of the New Term Loans on the loan register of the First Lien Exit Agent.

**Item 1. Amount of Convertible Notes Claims**

I certify that I am the Convertible Noteholder of the Convertible Notes Claims in the following amount (insert amount on the line below) or that I am the authorized signatory of that Convertible Noteholder.

*Insert the principal amount of the Convertible Notes Claims*

_____

**Item 2. Rights Calculation.  Calculate the maximum aggregate principal amount of New Term Loans and the number of shares of New First Lien Exit Facility Equity.** The number of Noteholder Offering Securities for which you may subscribe, based on the amount shown above, is calculated as follows:

| BOX A | | | | BOX B |
|---|---|---|---|---|
| _____<br>(Insert principal amount of Convertible Notes Claims from Item 1 above divided by $1,000. Do not round to the nearest cent.) | X | $23.75 | = | $_____<br>(Maximum dollar amount of the New Term Loans) (Must be denominated in round thousands; Round DOWN to nearest thousand if the fraction is less than one-half and UP to the nearest thousand if the fraction is one-half or greater) |

Each Eligible Holder is entitled to subscribe for $23.75 dollar amount of New Term Loans and 13.6879 shares of New First Lien Exit Facility Equity per $1,000 of principal amount of the Convertible Notes Claims, subject to the individual limits included in the calculations in the table above. Actual shares issued will be rounded to the nearest whole share (i.e. round DOWN to nearest share if the fraction is less than one-half and UP to the nearest share if the fraction is one-half or greater).

To subscribe, review and complete all items below, including Items 3, 4, 5, 6 and 7.

**Item 3. Exercise Instruction. Principal Amount of New Term Loans and Purchase Price.** By filling in the above and the following blanks, you are indicating that the undersigned Eligible Holder is interested in purchasing the principal amount of Noteholder Rights Offering Securities specified in Box C (associated with the amount of Term Loan Claims shown in Box A) at the aggregate Purchase Price shown in Box D, on the terms and subject to the conditions set forth in the Rights Offering Procedures

| BOX C | | | | BOX D |
|---|---|---|---|---|
| $_____<br>(Insert principal amount of New Term Loans you wish to purchase in the Rights Offering (may not exceed maximum amount shown | X | 100.00% | = | $_____<br>(Dollar amount of the New Term Loans)  (Must be denominated in round thousands) |

| above in Box B) (Must be denominated in round thousands) | | | | |
|---|---|---|---|---|
| | | | | |

Along with each $1,000 of principal amount of the New Term Loans, Eligible Holders will automatically receive 13.6879 shares of New First Lien Exit Facility Equity subject to the rounding provisions noted above.

**Item 4.  Eligible Holder Certification.**

(*This section is for _all_ parties who wish to participate in the Rights Offering*).

The undersigned is an Eligible Holder (as defined in the Rights Offering Procedures), meaning that such holder (please check one):

☐ has reviewed the definition of accredited investor annexed hereto in Exhibit A and is an accredited investor within the meaning of Rule 501(a) promulgated under Regulation D of the Securities Act;

☐ has reviewed the definition of qualified institutional buyer annexed hereto in Exhibit A and is a qualified institutional buyer as defined in Rule 144A under the Securities Act; or

☐ has reviewed the definition of U.S. Person annexed hereto in Exhibit A and is a non-U.S. Person within the meaning of Regulation S under the Securities Act located outside the United States.

**Item 5. Administrative and Registration Details.**

Administrative details for the New Term Loans and registration details for the New First Lien Exit Facility Equity will be required from all participating Eligible Holders. Further information will be provided to Eligible Holders who participate in the Rights Offering so that required details may be submitted, and will be sent to the Eligible Holder at the email address listed below.  *Please print very clearly*:

Insert email
address for
Eligible Holder: _____

**Item 6. Payment and Delivery Instructions.**

For all Eligible Holders (except Backstop Parties), payment of the aggregate Purchase Price shown in Box D above shall be made by **Subscription Payment Deadline** by wire transfer ONLY of immediately available funds in accordance with the wire instructions shown below.

For Backstop Parties payment of the aggregate Purchase Price shown in Box C above shall be made by **Backstop Funding Deadline** by wire transfer ONLY of immediately available funds in accordance with the wire instructions shown below.

## Delivery of Subscription Form

You must deliver the completed Subscription form to the Subscription Agent so that it is *received* by the Subscription Agent by the Subscription Instruction Deadline:

**Via email to:  Tabulation@epiqglobal.com**
**(with a reference to "SAE Rights" in the subject line)**

If you have any questions, please contact the Subscription Agent via email to Tabulation@epiqglobal.com (with a reference to "SAE Rights" in the subject line).

### Wire instructions for the payment of the amount shown in Box D:

You must wire the necessary funds so they are *received* in the following account by the Subscription Payment Deadline:

| | |
|---|---|
| Account Name: | Epiq Corporate Restructuring LLC as Subscription Agent for SAExploration Holdings |
| Bank Account No.: | |
| ABA/Routing No.: | |
| Bank Name: | |
| Bank Address: | |
| Reference: | SAExploration Holdings Rights Offer |

**Insert YOUR wire information in the event a refund is needed:**

| | |
|---|---|
| Account Name: | |
| Bank Account No.: | |
| ABA/Routing No.: | |
| Bank Name: | |
| Bank Address: | |
| Reference: | |

> **FOR ALL PARTIES OTHER THAN BACKSTOP PARTIES, PAYMENT MUST BE MADE BY THE SUBSCRIPTION PAYMENT DEADLINE.**
>
> **ELIGIBLE HOLDERS THAT ARE BACKSTOP PARTIES MUST DELIVER THE APPROPRIATE FUNDING NO LATER THAN THE BACKSTOP FUNDING DEADLINE.**

**Item 7. Certification.**

The undersigned hereby certifies that (i) the undersigned is the Convertible Noteholder of the Convertible Notes Claims set forth in Item 1 above (the "Holder"), or the authorized signatory (the "Authorized Signatory") of such holder acting on behalf of the Holder, (ii) the Holder has reviewed a copy of the Plan, the Disclosure Statement and the Rights Offering Procedures (including the Rights Offering Instructions attached thereto) and (iii) the Holder is an Eligible Holder (as described in Item 4) and understands that the exercise of the rights under the Noteholder Rights Offering is subject to all the terms and conditions set forth in the Plan, the Rights Offering Procedures and, if applicable, the Backstop Agreement.

By completing and returning this Subscription Form, the Eligible Holder (or the Authorized Signatory on behalf of the Holder) is committing to (i) continue to hold the Convertible Notes Claims shown in Box A until the termination or consummation of the Rights Offering, (ii) subscribe for the number of Noteholder Rights Offering Securities shown in Box C above, (iii) pay the aggregate Purchase Price listed in Box D above by the Subscription Payment Deadline (solely with respect to Eligible Holders that are not Backstop Parties), (iv) vote to accept the Plan (which vote shall not be withdrawn, changed, amended or revoked) and (v) provide its First Lien Exit Lender Documentation to the First Lien Exit Agent on or before five (5) Business Days prior to the Effective Date.

**The Holder (or the Authorized Signatory on behalf of such Holder) acknowledges that, by executing this Subscription Form, the Eligible Holder named below has elected to subscribe for the number of Noteholder Rights Offering Securities designated in Box C above and will be bound to pay the aggregate Purchase Price listed in Box D above for the Noteholder Rights Offering Securities it has subscribed for and that it may be liable to the Debtors to the extent of any nonpayment.**

Date:_____

Name of Eligible Holder:_____


Signature:_____

Name of Signatory:_____

Title:_____

Telephone Number: _____

Email:_____


**YOU MUST RETURN THIS FORM DIRECTLY TO THE SUBSCRIPTION AGENT SO THAT IT IS RECEIVED BY THE SUBSCRIPTION INSTRUCTION DEADLINE. IF YOU ARE NOT A BACKSTOP PARTY, YOU MUST WIRE YOUR PAYMENT SO IT IS RECEIVED BY THE SUBSCRIPTION PAYMENT DEADLINE.**

**EXHIBIT A**

"**Accredited Investor**" as defined in Rule 501 of Regulation D of the Securities Act shall mean any person who comes within any of the following categories, at the time of the sale of the securities to the person:

(1)    Any bank as defined in Section 3(a)(2) of the Securities Act of 1933 (the "Act"), or any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended; any insurance company as defined in Section 2(a)(13) of the Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in Section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are Accredited Investors;

(2)    Any private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940;

(3)    Any organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

(4)    Any director, executive officer, or general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of that issuer;

(5)    Any natural person whose individual net worth, or joint net worth with that person's spouse, exceeds $1,000,000;

    (i) Except as provided in clause (ii) paragraph (5), for purposes of calculating net worth under this paragraph (5):

        (A) The person's primary residence shall not be included as an asset;

8

(B) Indebtedness that is secured by the person's primary residence, up to the estimated fair market value of the primary residence at the time of the sale of securities, shall not be included as a liability (except that if the amount of such indebtedness outstanding at the time of sale of securities exceeds the amount outstanding 60 days before such time, other than as a result of the acquisition of the primary residence, the amount of such excess shall be included as a liability); and

(C) Indebtedness that is secured by the person's primary residence in excess of the estimated fair market value of the primary residence at the time of the sale of securities shall be included as a liability;

(ii) Clause (i) of this paragraph (5) will not apply to any calculation of a person's net worth made in connection with a purchase of securities in accordance with a right to purchase such securities, provided that:

(A) Such right was held by the person on July 20, 2010;

(B) The person qualified as an Accredited Investor on the basis of net worth at the time the person acquired such right; and

(C) The person held securities of the same issuer, other than such right, on July 20, 2010.

(6)     Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

(7)     Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii) under the Act; and

(8)     Any entity in which all of the equity owners are Accredited Investors.

"**Qualified institutional buyer**" as defined in Rule 144A under the Securities Act shall mean:

(i)     Any of the following entities, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with the entity:

(A) Any insurance company as defined in section 2(a)(13) of the Act;

9

(B) Any investment company registered under the Investment Company Act or any business development company as defined in section 2(a)(48) of that Act;

(C) Any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958;

(D) Any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees;

(E) Any employee benefit plan within the meaning of title I of the Employee Retirement Income Security Act of 1974;

(F) Any trust fund whose trustee is a bank or trust company and whose participants are exclusively plans of the types identified in paragraph (a)(1)(i) (D) or (E) of this section, except trust funds that include as participants individual retirement accounts or H.R. 10 plans.

(G) Any business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940;

(H) Any organization described in section 501(c)(3) of the Internal Revenue Code, corporation (other than a bank as defined in section 3(a)(2) of the Act or a savings and loan association or other institution referenced in section 3(a)(5)(A) of the Act or a foreign bank or savings and loan association or equivalent institution), partnership, or Massachusetts or similar business trust; and

(I) Any investment adviser registered under the Investment Advisers Act.

(ii)   Any dealer registered pursuant to section 15 of the Exchange Act, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $10 million of securities of issuers that are not affiliated with the dealer, Provided, That securities constituting the whole or a part of an unsold allotment to or subscription by a dealer as a participant in a public offering shall not be deemed to be owned by such dealer;

(iii)   Any dealer registered pursuant to section 15 of the Exchange Act acting in a riskless principal transaction on behalf of a qualified institutional buyer;

10

(iv)    Any investment company registered under the Investment Company Act, acting for its own account or for the accounts of other qualified institutional buyers, that is part of a family of investment companies which own in the aggregate at least $100 million in securities of issuers, other than issuers that are affiliated with the investment company or are part of such family of investment companies. Family of investment companies means any two or more investment companies registered under the Investment Company Act, except for a unit investment trust whose assets consist solely of shares of one or more registered investment companies, that have the same investment adviser (or, in the case of unit investment trusts, the same depositor), Provided That, for purposes of this section:

> (A) Each series of a series company (as defined in Rule 18f-2 under the Investment Company Act [17 CFR 270.18f-2]) shall be deemed to be a separate investment company; and

> (B) Investment companies shall be deemed to have the same adviser (or depositor) if their advisers (or depositors) are majority-owned subsidiaries of the same parent, or if one investment company's adviser (or depositor) is a majority-owned subsidiary of the other investment company's adviser (or depositor);

(v)    Any entity, all of the equity owners of which are qualified institutional buyers, acting for its own account or the accounts of other qualified institutional buyers; and

(vi)    Any bank as defined in section 3(a)(2) of the Act, any savings and loan association or other institution as referenced in section 3(a)(5)(A) of the Act, or any foreign bank or savings and loan association or equivalent institution, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with it and that has an audited net worth of at least $25 million as demonstrated in its latest annual financial statements, as of a date not more than 16 months preceding the date of sale under the Rule in the case of a U.S. bank or savings and loan association, and not more than 18 months preceding such date of sale for a foreign bank or savings and loan association or equivalent institution.

"**U.S. Person**" as defined in Rule 902 of Regulation S under the Securities Act shall mean:

(i)    Any natural person resident in the United States;

(ii)    Any partnership or corporation organized or incorporated under the laws of the United States;

(iii)    Any estate of which any executor or administrator is a U.S. person;

(iv)    Any trust of which any trustee is a U.S. person;

(v)     Any agency or branch of a foreign entity located in the United States;

(vi)    Any non-discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary for the benefit or account of a U.S. person;

(vii)   Any discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated, or (if an individual) resident in the United States; and

(viii)  Any partnership or corporation if:

(A) Organized or incorporated under the laws of any foreign jurisdiction; and

(B) Formed by a U.S. person principally for the purpose of investing in securities not registered under the Securities Act, unless it is organized or incorporated, and owned, by Accredited Investors who are not natural persons, estates or trusts.

For purposes of Rule 902 of Regulation S under the Securities Act, the following are not "U.S. persons":

(i)     Any discretionary account or similar account (other than an estate or trust) held for the benefit or account of a non-U.S. person by a dealer or other professional fiduciary organized, incorporated, or (if an individual) resident in the United States;

(ii)    Any estate of which any professional fiduciary acting as executor or administrator is a U.S. person if:

(A) An executor or administrator of the estate who is not a U.S. person has sole or shared investment discretion with respect to the assets of the estate; and

(B) The estate is governed by foreign law;

(iii)   Any trust of which any professional fiduciary acting as trustee is a U.S. person, if a trustee who is not a U.S. person has sole or shared investment discretion with respect to the trust assets, and no beneficiary of the trust (and no settlor if the trust is revocable) is a U.S. person;

(iv)    An employee benefit plan established and administered in accordance with the law of a country other than the United States and customary practices and documentation of such country;

Doc#: US1:14005058v4

(v)      Any agency or branch of a U.S. person located outside the United States if:

> (A) The agency or branch operates for valid business reasons; and

> (B) The agency or branch is engaged in the business of insurance or banking and is subject to substantive insurance or banking regulation, respectively, in the jurisdiction where located; and

(vi) The International Monetary Fund, the International Bank for Reconstruction and Development, the Inter-American Development Bank, the Asian Development Bank, the African Development Bank, the United Nations, and their agencies, affiliates and pension plans, and any other similar international organizations, their agencies, affiliates and pension plans.

13